John DOE, Plaintiff,

v.

William L. BALL, III, as Secretary of
the Navy, et al., Defendants.

No. 86–971–Civ–J–16.

United States District Court,
M.D. Florida,
Jacksonville Division.

May 4, 1989.

William J. Sheppard, Jacksonville, Fla., for plaintiff.

Dorothea Beane, Asst. U.S. Atty., Jacksonville, Fla., for defendants.

## OPINION

JOHN H. MOORE, II, District Judge.

This matter is before the Court for final resolution. The defendants, the Honorable William L. Ball, III, the Secretary of the Navy, and Captain J.W. Harris, USNR–TAR,[1] the Commanding Officer of the Naval Air Reserve in Jacksonville, Florida, (Navy),[2] filed a motion to dismiss this cause for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). At the final pretrial conference, held on 21 December 1988, the parties indicated to the Court that there were no disputes of material fact and that the case should be amenable to summary judgment. Accordingly, at the Court's direction, the parties filed a statement of stipulated facts and submitted memoranda thereon. After a careful consideration of the stipulated facts, legal memoranda, the relevant pleadings and applicable law, the Court determines that summary judgment is appropriate.

The plaintiff, filing suit under the pseudonym of John Doe, brought this case on 22 September 1986, claiming that his scheduled release from active duty as a Naval Reserve Canvasser Recruiter on 30 September 1986, would violate his rights under the Federal Rehabilitation Act, 29 U.S.C. §§ 791(b), 794 and 794(a), and under the due process clause of the Fifth Amendment. Mr. Doe contended that his release was predicated on the fact that he had tested positive for the HTLV–III antibody (HIV).[3] Simultaneously, Mr. Doe filed a motion for a preliminary injunction requesting this Court to enjoin the Navy from releasing him. After a hearing on Mr. Doe's motion the Court declined to impose a preliminary injunction and stayed the progression of the case pending his exhaustion of administrative remedies. Mr. Doe then filed an Application for Cor-

---

1. "USNR" is the abbreviation for United States Naval Reserve. "TAR" refers to the Training and Administration of Reserves program, which is concerned with the administration and training of reserve components.

2. Originally, this suit was filed naming then Secretary of the Navy John F. Lehman, and then Commanding Officer of the Naval Air Reserve in Jacksonville, Florida, Captain R.E. Webb, as defendants. Since the filing of this suit, there has been a succession of other persons occupying these offices. The plaintiff's suit is unaffected by these changes as it is one essentially against the United States. Therefore, the defendants will be collectively referred to in this opinion as the Navy.

3. HTLV–III is the abbreviation for Human T–Lymphotropic Virus III. Presently, it is referred to as Human Immunodeficiency Virus (HIV) antibodies. The antibody is produced by the human body as a response to Acquired Immune Deficiency Syndrome (AIDS). HTLV–III and HIV will be used interchangeably throughout this opinion.

rection of Military or Naval Record under the provisions of 10 U.S.C. § 1552. At the conclusion of proceedings before the Board for Correction of Naval Records (BCNR), Mr. Doe returned to this Court.

Mr. Doe has a long history of service with the Navy. He first enlisted in the Navy on 30 March 1972, and served continuously, except for a brief period in 1975, until 21 April 1977, at which time he was discharged. Mr. Doe returned to the Navy in January 1981, when he reenlisted in the Naval Reserve as part of the TAR program. Mr. Doe served on active duty until his discharge in January 1985. On 13 July 1985, Mr. Doe reenlisted in the Naval Reserve for a two-year term, applying for acceptance into the Naval Reserve Canvasser Recruiter Program under the provisions of NAVMILPERSCOM Inst. 1001.1B of 26 February 1985.[4]

The Canvasser Recruiter Program is composed of Naval Reservists recalled to active duty in a temporary status (TEMAC) to assist in recruiting for the Naval Reserve. Under the program, Naval Reservists are assigned to active duty in the geographic area in which they live so they may take advantage of their familiarity with the locale, and to conserve travel and transfer funds. The Navy accepted Mr. Doe for this program and he reported for active duty at the Naval Air Reserve, Jacksonville, Florida, on 25 November 1985. Mr. Doe's initial orders allowed service for 187 days, ending 31 May 1986. These orders would be extended through 30 September 1986, provided his performance was satisfactory. Also, the Program provided for further continuations of the active duty period.

Mr. Doe performed his duties as a Canvasser Recruiter in an excellent manner, scoring a 3.8 on his performance evaluation of 31 March 1986, out of a possible 4.0. The reporting senior noted that Mr. Doe had recruited 11 individuals during the reporting period, and otherwise commented upon Mr. Doe's abilities in glowing terms. He recommended Mr. Doe for retention and advancement. Subsequently, Mr. Doe's service as a Canvasser Recruiter was extended until 30 September 1986. Also, his underlying active duty status was extended to 30 September 1987, by Naval Military Personnel Command (NMPC).

On 20 July 1986, Mr. Doe was admitted to the Naval Hospital in Portsmouth, Virginia. This admission was necessary because he had tested positive for the presence of the HIV antibody. The physical examination performed disclosed that the presence of the antibody was his only symptom. Otherwise, he was in good health. On 22 August 1986, after Mr. Doe's return to Jacksonville, his commanding officer reported the positive test result for HIV to the Commander, Naval Reserve Force, via letter, pointing out his excellent record and the approved continuation of his active duty. He requested guidance concerning Mr. Doe's status. The Commander, Naval Reserve Force, notified NMPC of these developments.

On 26 August 1986, NMPC informed Mr. Doe that he would not be continued on active duty after 30 September 1986. Nevertheless, he was permitted to extend his agreement to remain on active duty and his Naval Reserve enlistment the very next day. These extensions would have continued his active duty until 30 September 1987, and his Naval Reserve enlistment until 13 September 1987. Later that same day, both extensions were cancelled after a message was received from NMPC. The Navy released Mr. Doe from active duty on 30 September 1986, returning him to the status of an inactive reservist. In his final performance evaluation Mr. Doe scored an overall rating of 3.8 and again received very favorable comments.

Prior to his release from active duty, Mr. Doe filed suit in this Court. As previously discussed, this Court denied Mr. Doe's request for a preliminary injunction, directing him to first exhaust possible administrative remedies. Accordingly, Mr. Doe applied to the BCNR in November of 1986 to contest his release from active duty.

**4.** NAVMILPERSCOM is an official abbreviation for Naval Military Personnel Command.

After a review of Mr. Doe's case, in light of the naval regulations then in effect, the BCNR found sufficient grounds of "error and injustice" to warrant a correction to his naval record in all appropriate places. The BCNR recommended that the correction reflect:

A. That on 27 August 1986, Petitioner extended his enlistment in the Naval Reserve for a period of three months, and that this extension was not cancelled at any subsequent time. Such an extension would result in the expiration of Petitioner's enlistment on 12 October 1987.

B. That on 27 August 1986, Petitioner extended his agreement to remain on active duty until 30 September 1987, that this extension was not subsequently cancelled, and that Petitioner served on active duty until the latter date, at which time he was released from active duty and transferred to the inactive reserve.

The BCNR concluded that the correction to the record would constitute sufficient relief. The Secretary of the Navy accepted the BCNR's recommendation on 15 March 1988.[5] Pursuant to the correction of his naval record, Mr. Doe was awarded the compensation to which he would have been entitled had he been allowed to continue on active duty until 30 September 1987.

On 7 April 1988, Mr. Doe filed his Third Status Report with this Court stating that the results obtained before the BCNR failed to provide him complete relief. Specifically, Mr. Doe claims that the following issues remain to be determined:

(a) his future as a Naval Canvasser Recruiter after 30 September 1987;

(b) whether the Navy has failed to complete implementation of an affirmative action plan for the physically handicapped and specifically for individuals who have tested positive for the HIV antibody;

(c) his damages for the deprivation of his right to due process; and

(d) his attorney's fees and costs.

On 9 December 1988, the Navy filed its motion to dismiss.

■ The first question this Court must consider is whether the Rehabilitation Act applies to uniformed members of the armed forces. The Act prohibits discrimination against individuals on the basis of a handicap "under any program or activity conducted by any Executive agency...." 29 U.S.C. § 794. In addition, the Act requires each department, agency, and instrumentality within the executive branch to develop an affirmative action program for the hiring, placement, and advancement of individuals with handicaps. 29 U.S.C. § 791(b). The Act is enforceable by private individuals subjected to handicap discrimination by employing agencies of the federal government through the provisions of 29 U.S.C. § 794a(a)(1), which expressly adopts the "remedies, procedures, and rights" found in section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (Title VII). *See Treadwell v. Alexander*, 707 F.2d 473, 475 (11th Cir.1983); *Prewitt v. U.S. Postal Service*, 662 F.2d 292, 304 (5th Cir. Unit A 1981).

The Court, therefore, in determining the appropriate scope to be given to the Act, must look to the remedial framework of Title VII.[6] 42 U.S.C. § 2000e–16(a) prohibits discrimination on the basis of race, color, religion, sex, or national origin, affecting employees or applicants for employment in military departments. However, the courts of appeals which have considered the issue have concluded that the definition of military departments, as used in Title VII, does not include uniformed military personnel. *Roper v. Dept. of Army*, 832 F.2d 247 (2nd Cir.1987); *Gonzalez v. Dept. of Army*, 718 F.2d 926 (9th Cir.1983); *Johnson v. Alexander*, 572 F.2d 1219 (8th Cir.1978). Those courts have determined that Congress, when enacting Ti-

---

5. The entire administrative file of the Board for Correction of Naval Records in this case was submitted to the Court and filed under seal.

6. Pursuant to the remedial scheme of Title VII, a private action may not be commenced until administrative remedies are exhausted. *Prewitt,* at 304. The proceedings before the BCNR satisfy this requirement.

tle VII, meant to distinguish between civilian employment in a "military department" and uniformed military personnel in the armed forces.

In *Stinson v. Hornsby*, 821 F.2d 1537 (11th Cir.1987), the court had before it a claim by a discharged member of the Alabama National Guard alleging racial discrimination by the Department of the Army, and seeking relief under 42 U.S.C. §§ 1981, 1983, and Title VII. The district court had dismissed Stinson's complaint holding that it failed to state a claim for relief. The Court affirmed that portion of the district court's opinion dismissing Stinson's Title VII claim. In analyzing Stinson's Title VII claim the Court made a distinction between civilian employees who were members of military departments and uniformed military personnel who were members of the armed forces. The Court concluded that Stinson was a member of the armed forces, and was therefore not covered by the provisions of Title VII. In so ruling, the Court wrote:

> Our holding today is that members of the National Guard are generally employees of the state; but where the facts indicate that the person is on full-time military duty and other factors indicate that the person is more military than civilian, no Title VII action may be brought.

*Id.* at 1541. In this case there can be no question that Mr. Doe was a member of the armed forces. Title 10 U.S.C. § 101(4) defines *armed forces* to include the Navy. Title 10 U.S.C. § 5001(a)(1) defines Navy as including the Naval Reserve. Since the parameters of the Rehabilitation Act are restricted by Title VII, and since *Stinson* holds that members of the armed forces have no cause of action under Title VII, the Court concludes that Mr. Doe has no remedy under the Rehabilitation Act.

In light of the above ruling that the Rehabilitation Act does not afford Mr. Doe any remedy, it is a matter of logical force for this Court to conclude that the affirmative action mandate of 29 U.S.C. § 791 does not extend to programs involving military personnel. Indeed, the Eleventh Circuit has held that Department of Defense regulations enacted pursuant to the Rehabilitation Act do not extend to programs related to the procurement of military personnel. *Smith v. Christian*, 763 F.2d 1322, 1325 (11th Cir.1985). Thus, the allegation that the Navy has failed to implement an affirmative action program for the physically handicapped, and specifically for individuals who have tested positive for the HIV antibody, fails to state a claim for relief.

Mr. Doe's final claim for relief is that the Navy deprived him of his right to due process of law under the Fifth Amendment by discharging him in violation of SECNAVINST 5300.30 dated 4 December 1985.[7] SECNAV Instruction 5300.30 is an internal regulation of the Department of the Navy setting forth policy regarding the "identification, surveillance and disposition of military members infected with HTLV–III." Section 2b(1) of the Instruction provides:

> Members who are HTLV–III antibody positive who demonstrate no evidence of progressive clinical illness or immunological deficiency shall be retained in naval service.

In addition, Section 8a provides:

> Military personnel who are antibody positive but manifest no evidence of progressive clinical illness or immunological deficiency (physical laboratory assessment, demonstration of ability to respond to immunizations, and ability to mount a protective immune response to immunizations or exposure to naturally occurring pathogens), shall be retained in service, unless some other reason for separation exists. This interim policy is based on the following considerations:
>
> (1) There is no demonstrated risk of transmission of disease in normal daily activities.
>
> (2) An investment in training of these members has been made.
>
> (3) The condition may be incident to service.

In its administrative proceedings the BCNR concluded that Mr. Doe had been released from the Navy as a result of test-

---

**7.** SECNAVINST is the official abbreviation for Secretary of the Navy Instruction.

ing positive for the HIV antibody. The Board found that such action violated the regulations set forth in SECNAVINST 5300.30 and recommended that Mr. Doe's record be corrected to reflect its findings. The Secretary of the Navy approved this recommendation, Mr. Doe's record was corrected, and he received the money that he would have made for the relevant time period. Now Mr. Doe, contending that the Board's recommendation and its approval afford him inadequate relief, argues that he should have been returned to active service after 30 September 1987.

■ Before this Court can review a military personnel decision, it must engage in the analysis outlined in *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), in order to determine whether Mr. Doe's constitutional claim is barred. The *Mindes* approach was recently reaffirmed in *Stinson.* 821 F.2d at 1540. The *Mindes* inquiry compels an independent two-step process. First, this Court must look to see if Mr. Doe asserts:

(a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and

(b) exhaustion of available intraservice corrective measures.

*Mindes,* 453 F.2d at 201; *Stinson,* 821 F.2d at 1540. If this threshold inquiry cannot be satisfied then an internal military decision should not be reviewed.

■ Mr. Doe has alleged a deprivation of Fifth Amendment due process and a concomitant violation of the Navy's own regulations regarding persons who test positive for the HIV antibody.[8] In addition, he has exhausted his administrative remedies by going before the BCNR. *See* 10 U.S.C. § 1552. Therefore, the initial phase of the *Mindes* test has been satisfied. The second part of the *Mindes* analysis requires this Court to conduct a weighing of the following four factors:

1. The nature and strength of the plaintiff's challenge to the military determination.

2. The potential injury to the plaintiff if review is refused.

3. The type and degree of anticipated interference with the military function.

4. The extent to which the exercise of military expertise or discretion is involved.

*Mindes,* 453 F.2d at 201; *Stinson,* 821 F.2d at 1540. The weighing of these factors is intended to aid district courts in evaluating the substance of the allegation "in light of the policy reasons behind nonreview of military matters." *Mindes,* 453 F.2d at 201.

Considering the first factor, the nature and strength of Mr. Doe's challenge, the Court concludes that it weighs in favor of the Navy. Mr. Doe's allegation that his Fifth Amendment due process rights have been violated is tenuous at best. It is true that the BCNR found that the Navy had violated its own regulations in September of 1986, and that Mr. Doe's record was corrected and he received compensation. However, this Court can discern no right of Mr. Doe's to continued active service after 30 September 1987, that has been violated. Under applicable regulations he cannot serve additional periods of extended active duty as a result of his HIV positivity. A Secretary of Defense Memorandum dated 20 April 1987, provides that "[r]eserve component members with serologic evidence of HIV infection are ineligible for extended active duty (duty for a period of more than 30 days) except under conditions of mobilization." Secretary of Defense Memorandum, at 7, para. c. 2. (appended to Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment as Exhibit A). This memorandum effectively supersedes any policy to the contrary contained in SECNAVINST 5300.30. Moreover, that Instruction expressly states that it is an interim policy. Also, Mr. Doe was

---

**8.** The thrust of Mr. Doe's Fifth Amendment claim in Count III of the complaint is that the Navy violated its own rules when discharging

him from active duty. *See,* Response to Defendants' Motion to Dismiss, p. 7, n. 5.

ineligible to reapply for the Naval Reserve Canvasser Recruiter program after 30 September 1987, because of an insufficient amount of obligated time remaining on his underlying enlistment. Mr. Doe's underlying enlistment expired on 12 October 1987. NMPC Instruction 1001.1B provides that personnel applying for the Canvasser Recruiter program must "[h]ave sufficient obligated service (at least 9 months from application date) to perform the requested period of active duty." Thus, the nature and strength of Mr. Doe's challenge weighs in favor of the Navy.

The second factor, the potential injury to Mr. Doe if review is refused, is related to the analysis of the first factor. Mr. Doe's claim to continued service is attenuated, and the BCNR has already remedied the wrong initially suffered by Mr. Doe. Thus, the injury to Mr. Doe should this Court decline review is not of a magnitude which would compel judicial intervention. Therefore, this second factor also weighs in favor of the Navy.

The third factor, the type and degree of anticipated interference with the military function, weighs in the Navy's favor. Although some interference with the military decision-making process is always involved when a civilian court imposes its scrutiny, such an intrusion here would be serious enough to impede the military in its performance of vital duties. Recognizing that physical qualification is an important prerequisite to being an active member of the military, Congress has vested the military with discretion to establish physical standards and to determine who may serve in an active duty status. *See Christian,* 763 F.2d at 1324–25. As the above-referenced Secretary of Defense Memorandum establishes, Mr. Doe is not physically qualified for an extension of active duty beyond that granted him through the administrative process. Were this Court to undertake a review of Mr. Doe's claim to future active service, it would constitute a significant and ill-advised intrusion into the sensitive realm of the military personnel decision-making process. Therefore, this third factor weighs in the Navy's favor and counsels against judicial review.

The fourth factor, the extent to which the exercise of military expertise or discretion is involved, is related to the third factor and also counsels against judicial review. As with factor three, the decision concerning further active duty service for a member of a Reserve component is one entrusted by Congress to the Executive Branch and the military departments. The current guidelines, as previously discussed, dictate that Reserve component members with evidence of HIV infection are not eligible for extended active duty. If this Court were to evaluate the propriety of such a standard in the military context, it would necessitate an incursion into the expertise and discretion that has been traditionally dedicated to the military. Thus, the fourth factor weighs in favor of the Navy.

■ Since this Court has concluded that all four *Mindes* factors weigh in favor of the Navy, review of this matter must be declined. However, even if the above factors weighed more favorably toward Mr. Doe, and this Court did decide to review his claim, he would not be successful. Mr. Doe has no constitutional right which has been violated.

In order to state a claim under the due process clause, Mr. Doe must first demonstrate the deprivation of some liberty or property interest. He has failed to establish that he has any such interest beyond the relief already granted. As the Court has previously discussed, the BCNR has accorded a complete relief to Mr. Doe for his wrongful release from active duty in September of 1986. Subsequent to his wrongful release, however, the Secretary of Defense established a new policy for reserve component members with evidence of HIV infection. This policy is determinative of Mr. Doe's right to continued active service and, thus, of his due process claim.

■ The Secretary of Defense Memorandum of 20 April 1987, clearly precludes additional periods of extended active duty for Reserve personnel who are HIV positive. In light of this regulation, Mr. Doe has no expectation of continued service

that would give rise to a property interest. In addition, Mr. Doe has not come forward with any evidence to suggest that he has been deprived of a cognizable liberty interest. Although Mr. Doe asserts that he suffered damage to his reputation as a result of his wrongful discharge in September of 1986, this allegation is insufficient to state a constitutional claim. *See, Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Therefore, were this Court to review Mr. Doe's claim, it would conclude that he has failed to make a showing of a deprivation of either a liberty or property interest that violates due process. *See Sims v. Fox,* 505 F.2d 857 (5th Cir. 1974); *Alberico v. U.S.,* 783 F.2d 1024 (Fed. Cir.1986).

Finally, Mr. Doe is not entitled to an award of attorney's fees and costs as he is not a prevailing party in this Court. Although he did prevail at the administrative level to the extent he was awarded one year's back pay and correction of his naval record, that is unrelated to proceedings before this Court. In denying Mr. Doe's application for a preliminary injunction this Court determined that the case had been prematurely commenced. At that point the case could very well have been dismissed and Mr. Doe would have been forced to refile at the conclusion of the administrative process. Mr. Doe, therefore, is not entitled to an award of attorney's fees and costs.

Accordingly, it is now

ORDERED AND ADJUDGED:

That the defendants' motion to dismiss, considered by the Court as a motion for summary judgment, be, and the same is, hereby GRANTED. The clerk of the court is hereby directed to enter final judgment in favor of the defendants in this cause.

DONE AND ORDERED.