John DOE, Plaintiff–Appellant,

v.

H. Lawrence GARRETT, III, as Secretary of the Department of the Navy, and J.W. Harris, as Commanding Officer, Naval Air Reserve, Jacksonville, Defendants–Appellees.

No. 89–3404.

United States Court of Appeals, Eleventh Circuit.

June 25, 1990.

---

William J. Sheppard, Matthew Farmer, Sheppard & White, Jacksonville, Fla., for plaintiff-appellant.

Dorothea Beane, Ralph J. Lee, Asst. U.S. Attys., Jacksonville, Fla., Lt. Cdr. Brian Robertson, Dept. of Navy, Washington, D.C., for defendants-appellees.

Before KRAVITCH and JOHNSON, Circuit Judges, and KAUFMAN *, Senior District Judge.

JOHNSON, Circuit Judge:

Plaintiff John Doe appeals from the district court's grant of summary judgment for the defendants, Secretary of the Navy William L. Ball, III, and Captain J.W. Harris, USNR–TAR,[1] Commanding Officer of the Naval Air Reserve in Jacksonville, Florida ("the Navy"), in Doe's suit against the Navy under the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 791, 794, 794a (West 1985 & Supp.1989) ("the Act"), and the Due Process Clause of the Fifth Amendment.

## I. STATEMENT OF THE CASE

Doe enlisted in the Navy in 1972, and served, with a short break in 1975, until 1977. He reenlisted in the Naval Reserve in 1981 and was discharged on January 16, 1985. On July 13, 1985, he reenlisted in the Naval Reserve for a two-year term and was accepted into the Naval Reserve Canvasser Recruiter ("NRCR") program, as a temporary active-duty officer assigned to assist recruiting efforts. Doe reported for duty in the NRCR program at Jacksonville, Florida on November 25, 1985. He re-ceived excellent ratings in the NRCR program, and his initial term of service was extended from May 31, 1986 to September 30, 1986. His performance evaluation indicated that he "display[ed] outstanding potential to be a truly dynamic recruiter," and that he was "conscientious, enthusiastic and highly motivated." Doe was subsequently recommended for an extension of temporary active duty through September 30, 1987, which was tentatively approved by Naval Military Personnel Command ("NMPC") on July 8, 1986.

On July 20, 1986, Doe was admitted to the Naval Hospital at Portsmouth, Virginia, following the tragic news that he had tested positive as a carrier of the AIDS virus (also known as Human Immunodeficiency Virus or "HIV"). He did not, however, show any symptoms of AIDS itself.[2] On August 26, 1986, Doe was informed by NMPC that, because of his AIDS infection, he would not be allowed to continue on active duty beyond September 30, 1986. On August 27, 1986, the Navy nevertheless allowed Doe to accept his previously-approved extension of temporary active duty through September 30, 1987. Later the same day, however, following receipt of a message from NMPC, this extension was cancelled. On September 30, 1986, Doe was released from active duty and returned to inactive status in the Naval Reserve. His final performance evaluation was again very favorable.

At the time Doe tested HIV-positive and was released from the NRCR program, the governing Navy regulation, Secretary of the Navy Instruction 5300.30, dating from December 4, 1985 ("the 1985 regulation"), provided that Naval personnel infected with AIDS but showing no symptoms of the disease should be "retained in service." On April 20, 1987, however, this regulation was superseded by a Secretary of Defense

---

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

1. United States Naval Reserve, Training and Administration of Reserves.

2. In September 1986, Doe was hospitalized briefly with a possible symptom of AIDS. This symptom disappeared, however, and he was re-leased on September 16, 1986. His physician certified that there was "medically no reason for [Doe] to be separated from the Navy at this time." So far as the record before this Court reveals, Doe has not subsequently developed symptoms of AIDS or AIDS-related complex itself.

Memorandum ("the 1987 regulation") providing that Naval Reserve personnel infected with AIDS were ineligible for active-duty status for periods exceeding thirty days, except under conditions of mobilization.[3]

Doe brought suit in the district court on September 22, 1986, challenging his scheduled release from active duty in the NRCR program. The court ordered Doe to exhaust his administrative remedies, and he applied to the Navy's Board for Correction of Naval Records ("BCNR") in November 1986. On September 14, 1987, the BCNR found that Doe's release from active duty violated the Navy's 1985 regulation, and recommended correction of Doe's records and an award of back-pay commensurate with active-duty status through September 30, 1987. The BCNR also recommended that Doe's enlistment in the Naval Reserve be extended through October 12, 1987. The Secretary of the Navy adopted the BCNR's recommendation on March 15, 1988. Doe thereafter returned to the district court, contending that the relief granted by the Navy was inadequate and that (1) the Navy's exclusion of him from reenlistment in the NRCR program on grounds of his AIDS infection violated the Rehabilitation Act, (2) the Navy had an obligation under the Act to implement an affirmative action plan for personnel handicapped by AIDS, (3) he was entitled to damages and injunctive relief[4] for the Navy's alleged violation of his due process rights in connection with his 1986 release from active duty and his prospective exclusion from the NRCR program, and (4) he was entitled to attorney's fees and costs.

On May 4, 1989, the district court entered summary judgment denying Doe all relief. *Doe v. Ball*, 725 F.Supp. 1210 (M.D. Fla.1989). The court found that (1) the Rehabilitation Act did not apply to uni-formed members of the armed services such as Doe, (2) the court was precluded from reviewing the constitutional validity of the Navy's personnel decisions as to Doe under *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971), and that, even if review were not precluded, Doe had failed to establish a deprivation of any constitutionally-protected property or liberty interest, and (3) Doe was therefore not entitled to attorney's fees or costs. Doe appeals to this Court, contending that the district court erred in its conclusions on the Rehabilitation Act and due process issues, and raising for the first time the argument that the Navy is equitably estopped from refusing to reenlist him in the NRCR program. The questions presented are issues of law subject to *de novo* review.

## II. ANALYSIS

### A. *The Rehabilitation Act*

■ The district court held that Doe "has no remedy under the Rehabilitation Act," *Doe*, 725 F.Supp. at 1214, relying on well-established caselaw excluding uniformed military personnel from protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–16 (West 1981). *See Stinson v. Hornsby*, 821 F.2d 1537, 1539, 1541 (11th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 402, 102 L.Ed.2d 390 (1988); *accord Roper v. Department of the Army*, 832 F.2d 247, 248 (2d Cir.1987); *Gonzalez v. Department of the Army*, 718 F.2d 926, 927–29 (9th Cir.1983). The district court also held that, "[p]ursuant to the remedial scheme of Title VII, a private action [under the Rehabilitation Act] may not be commenced until administrative remedies are exhausted." *Doe*, 725 F.Supp. at 1213 n. 6. The court noted that Doe's proceedings before the BCNR satisfied this requirement. *Id.*[5] Although the district

---

**3.** Furthermore, two naval messages from the Chief of Naval Operations, dated April 3, 1987 and June 2, 1987, provided that HIV-positive reserve personnel were ineligible for recall or assignment to active duty, and indeed that a negative HIV-antibody test was required for such recall or assignment.

**4.** Doe's counsel, at the conclusion of oral argument, indicated that Doe had abandoned any claim for damages in this regard and sought only injunctive relief on this claim. *See* Part II(B) below.

**5.** While the Navy argued before the district court that Doe had not exhausted before the BCNR his claim for prospective reenlistment in

court did not specifically address the issue, we note that it is well established that infection with AIDS constitutes a handicap for purposes of the Act. *See Martinez v. Hillsborough County School Board*, 861 F.2d 1502, 1506 (11th Cir.1988); *see also Nassau County School Board v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). Doe argues that the district court erred by relying on Title VII caselaw because section 794a(a)(2) of the Act makes available to claimants under section 794 the "remedies, procedures, and rights" of Title *VI* of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d (West 1981). While Doe's argument might appear at first glance to have merit, we conclude that the district court's conclusion was correct.

An outline of the statutory framework is necessary to place the issue in context. Section 794(a) of the Rehabilitation Act [6] provides:

> No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

Section 791 of the Act [7] imposes an obligation on federal agencies to promulgate affirmative action plans assuring "adequate hiring, placement, and advancement opportunities for individuals with handicaps." 29 U.S.C.A. § 791(b). The substantive scope of section 791 thus goes well beyond the simple nondiscrimination requirement of section 794(a). *See Southeastern Community College v. Davis*, 442 U.S. 397, 410–13, 99 S.Ct. 2361, 2369–70, 60 L.Ed.2d 980 (1979). Prior to 1978, however, section 794(a) did not apply to federal agencies and section 791 did not afford

federal employees any private right of action.

Congress amended the Act in 1978 to include the reference in section 794(a) to "Executive agenc[ies]" and the Postal Service, thereby "extend[ing] [its] proscriptions ... to activities of the federal government." *See Treadwell v. Alexander*, 707 F.2d 473, 475 (11th Cir.1983); Rehabilitation Amendments of 1978, P.L. 95–602, § 119, 92 Stat. 2955, 2982. The 1978 amendments also enacted section 794a(a) of the Act, which states:

> (a)(1) The remedies, procedures, and rights set forth in [Title VII, 42 U.S.C.A. § 2000e–16] ... shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under [section 791], a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.
>
> (2) The remedies, procedures, and rights set forth in [Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d], shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

*See* P.L. 95–602, § 120, 92 Stat. 2955, 2982–83. As this Court noted in *Treadwell*, 707 F.2d at 475, section 794a(a)(1) "created a private right of action under [section 791] in favor of persons subjected to handicap discrimination by employing agencies of the federal government." This private right of action, by its very terms, incorpo-

---

the NRCR program, the Navy abandons any claim in this regard on appeal. It appears obvious that Doe sought from the BCNR all the relief which the BCNR could conceivably have granted him.

**6.** This section is frequently referred to as "section 504" of the Act, according to the section designation in the original legislation.

**7.** This section is frequently referred to as "section 501" of the Act. *See* note 6, *supra.*

rated Title VII's requirement of exhaustion of administrative remedies.

Section 794a(a)(2), on the other hand, reflects the fact that section 794 is fundamentally modeled after Title VI. *See Alexander v. Choate,* 469 U.S. 287, 293 n. 7, 105 S.Ct. 712, 716 n. 7, 83 L.Ed.2d 661 (1985). This Court's predecessor first held that Title VI created an implied private cause of action in *Bossier Parish School Board v. Lemon,* 370 F.2d 847, 852 (5th Cir.) (Wisdom, J.), *cert. denied,* 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967), and we held likewise with regard to section 794 in *Helms v. McDaniel,* 657 F.2d 800, 806 n. 10 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). *See also Camenisch v. University of Texas,* 616 F.2d 127, 131 (5th Cir.1980) (Tuttle, J.), *vacated on other grounds,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Furthermore, it is established, as a general matter, that Title VI—and by extension section 794—does not incorporate Title VII's requirement of exhaustion of administrative remedies. *See Milbert v. Koop,* 830 F.2d 354, 356 (D.C.Cir.1987) (Frank A. Kaufman, J., sitting by designation); *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 737 (3d Cir.1983); *Miener v. Missouri,* 673 F.2d 969, 978 & n. 10 (8th Cir.) (Henley, J.), *cert. denied,* 459 U.S. 909, 916, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982); *Camenisch,* 616 F.2d at 133–36. The 1978 amendments thus posed the question whether handicapped persons bringing Rehabilitation Act claims against federal government employers could proceed under the direct, Title VI-style cause of action available to all other claimants under section 794, or were limited to the remedy created by section 794a(a)(1), with its incorporation of Title VII's administrative exhaustion requirement.

The present Fifth Circuit, in *Prewitt v. United States Postal Service,* 662 F.2d 292, 302–04 (5th Cir. Unit A 1981),[8] held that in order to accommodate Congress's intent in enacting the 1978 amendments, it was necessary to impose the section 791/Title VII exhaustion requirement on federal employees bringing actions under section 794. Several circuits have gone further and held that private actions against federal employers may not be brought under section 794 at all, but only pursuant to section 791 and the Title VII remedies of section 794a(a)(1). *See Johnston v. Horne,* 875 F.2d 1415, 1420–21 (9th Cir.1989), and cases cited therein (7th, 9th, and 10th Circuits). Those circuits which, like *Prewitt,* have found that section 794 affords a private right of action to federal employees have nevertheless agreed with *Prewitt* that such claimants must satisfy the section 794a(a)(1) procedures. *See Milbert,* 830 F.2d at 357, and cases cited therein (5th, 6th, and 8th Circuits).[9] The basic rationale for the approach taken by these courts, as stated by the Seventh Circuit, is that, because Title VII is the exclusive remedy for federal government discrimination on grounds of race, religion, sex, or national origin, "we ... cannot believe that ... Congress would have wanted us to interpret the Act as allowing the handicapped—alone among federal employees or job applicants complaining of discrimination—to bypass the administrative remedies in Title VII." *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1322 (7th Cir. 1984); *see also Boyd v. United States Postal Service,* 752 F.2d 410, 413–14 (9th Cir.1985).

Support for this conclusion is also found in the language of section 794a(a)(2), which applies Title VI remedies and procedures only to claimants suing "any recipient of Federal assistance or Federal provider of such assistance under section 794." This would seem to encompass private or state

---

**8.** *Prewitt* was decided by Unit A of the Fifth Circuit on November 5, 1981, subsequent to the October 1, 1981 circuit split, and is therefore not binding precedent on this Court. *See Treadwell,* 707 F.2d at 475 n. 4; *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982).

**9.** The D.C. Circuit in *Milbert,* while agreeing with *Prewitt* that exhaustion was required under either section 791 or 794, declined to decide whether a claimant suing a federal agency could proceed under section 794 at all. The court "strongly suggest[ed]," however, that such a claimant "seek relief under section [791] rather than under section [794]." 830 F.2d at 357.

recipients of federal funds and their federal providers, but not federal agencies themselves. *See Morgan v. United States Postal Service,* 798 F.2d 1162, 1165 (8th Cir. 1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). While this Court has not yet explicitly decided this issue, we have cited *Prewitt* with approval and have noted that "we look to it for guidance." *Treadwell,* 707 F.2d at 475 & n. 4.[10] For the reasons stated in *Prewitt* and discussed above, we take this opportunity to explicitly adopt *Prewitt*'s holding that private actions against federal government employers under the Act, whether brought under section 791 or 794, must satisfy "the requirement of exhaustion of administrative remedies in the manner prescribed by section [794a(a)(1) ] and thus by Title VII." *Milbert,* 830 F.2d at 357.

■ We think this conclusion goes far to support the district court's reasoning that Title VII caselaw must be consulted in considering the application of the Rehabilitation Act to uniformed military personnel. The reasons underlying the Title VII "military exception" have been well stated by Judge Fletcher for the Ninth Circuit in *Gonzalez,* 718 F.2d at 927–29, and need not be repeated here. *See also Johnson v. Alexander,* 572 F.2d 1219, 1223–24 (8th Cir.) (Henley, J.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978). As noted above, this Court has adopted that exception. *Stinson,* 821 F.2d at 1539, 1541. Just as it would be incongruous to require persons claiming discrimination on grounds of sex, race, religion, or national origin—but not handicapped discrimination

claimants—to follow Title VII procedures in suing federal employers, so it would be incongruous to allow uniformed military personnel to bring discrimination claims against the military based on handicap, when statutory claims based on sex, race, religion, or national origin are barred.

Any doubt we might entertain on this issue is dispelled by *Smith v. Christian,* 763 F.2d 1322 (11th Cir.1985), in which this Court rejected a section 794 claim brought against the Navy by an individual who was denied a commission in the Naval Reserve Medical Service Corps because he was missing his right index finger. Without addressing the issue whether the claimant had a cause of action against the military under section 794 to begin with,[11] *Smith* found that section 794 did not override the Navy's countervailing statutory authority to prescribe physical qualifications for enlistees, an area over which we found "Congress has given the Executive Branch wide latitude." *Smith,* 763 F.2d at 1325. *Smith* found the Navy's authority specifically rooted in two statutes, 10 U.S.C.A. § 591(b) (West 1983) and 10 U.S.C.A. § 5579(a) (West 1959). *See Smith,* 763 F.2d at 1324 & n. 3. Only the former applies here.[12] It states: "Except as otherwise provided by law, the Secretary concerned shall prescribe physical, mental, moral, professional, and age qualifications for the appointment of persons as Reserves of the armed forces under his jurisdiction." Doe understandably focuses on the opening phrase, which *Smith* did not recite, and argues essentially that *Smith* reached the wrong conclusion. Whatever the strength of *Smith*'s reasoning, however, we are

10. *Treadwell* appeared to adopt, at least by implication, *Prewitt*'s holding that a cause of action against federal employers existed under section 794. *See Treadwell,* 707 F.2d at 475 (noting that the plaintiff had "brought suit under §§ [791] and [794]"). We concur in that implication and hereby make it explicit. *Treadwell* did not, however, address the exhaustion of remedies issue.

11. We did not address that issue in *Smith* because the district court did not; the district court granted summary judgment for the Navy on different grounds, which this Court upheld on appeal. *See Smith v. United States Navy,* 573 F.Supp. 1361, 1364 (S.D.Fla.1983), *aff'd,* 763

F.2d 1322 (11th Cir.1985). *Smith* did, however, cite "generally" to the Eighth Circuit's decision in *Johnson v. Alexander, supra,* which articulated the "military exception" to Title VII. *See Smith,* 763 F.2d at 1325.

12. Section 5579 applied only to the Navy's Medical Service Corps and was repealed effective September 15, 1981. *See* Defense Officer Personnel Management Act of 1980, P.L. 96–513, §§ 321, 701(a), 94 Stat. 2835, 2892, 2955. Section 5579 was relevant in *Smith* because the claimant there had applied and been rejected prior to its repeal. *See Smith,* 573 F.Supp. at 1362–63, 1366.

bound by it as precedent.[13] We note that the disputed language might plausibly be read simply to denote that entities other than the "Secretary concerned" might be authorized by law to prescribe qualifications for the Reserves, rather than to suggest substantive limitations on those qualifications. We believe *Smith* supports, *a fortiori*, the Navy's exclusion of Doe from reenlistment in the NRCR program.

For the foregoing reasons, we agree with the district court that Doe has no remedy under the Rehabilitation Act.

## B. *The Due Process Clause*

It is unclear from Doe's brief on appeal whether his due process claim relates to his release from the NRCR program in 1986, his exclusion from reenlistment in the program subsequent to September 30, 1987, or both. The district court found that the BCNR had already afforded Doe complete relief for the 1986 release, and thus focused primarily on his reenlistment claim. *See Doe,* 725 F.Supp. at 1216. At the conclusion of oral argument before this Court, Doe's counsel stated that Doe now seeks only injunctive relief on the due process claim, not damages. Because it is clear that there is no conceivable injunctive remedy which could provide any relief for Doe's 1986 release beyond that already granted by the BCNR, Doe's only remaining due process claim before this Court relates to his exclusion from reenlistment in the NRCR program.

■ The Navy's refusal to reenlist Doe in the NRCR program does not impinge on any constitutionally-protected property interest. It is well established that a military officer's expectation of continued military employment does not rise to the level of a property interest unless it is rooted in some statute, regulation, or contract. *Sims v. Fox,* 505 F.2d 857, 860–62 (5th Cir.1974) (*en banc*), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678

(1975); *accord Alberico v. United States,* 783 F.2d 1024, 1026–27 (Fed.Cir.1986). In this case, as we have noted in Part I, the applicable military regulations in effect since April 1987 specifically exclude Doe from eligibility for the NRCR program because of his HIV-positive status. More generally, the Navy's regulations governing the NRCR program, as set forth in Naval Military Personnel Command Instruction 1001.1B, provide that assignments to the NRCR program are for temporary periods of 180 days, one year, or two years, that retention beyond the initial period "is not implied or guaranteed," and that the NRCR program "is not a career program." Assignments and reassignments to the program are made by the Commander of the Naval Military Personnel Command from among applicants meeting a detailed list of requirements; nothing in the regulations suggests any vested right or assurance that any applicant will be accepted into the program. To the contrary, the regulations specifically warn that even incumbent NRCR officers "may be non-continued ... in accordance with the needs of the Naval Reserve Recruiting Program." Courts have rejected claimed property interests even in cases involving outright discharge from career positions in the military. *See Sims,* 505 F.2d at 858–60; *Alberico,* 783 F.2d at 1026–27. Accordingly, Doe's claim to a property interest in prospective reassignment to the NRCR program is devoid of merit.

■ Doe's claim to a protected liberty interest is equally devoid of merit. It is established that discharge or termination of a government employee on the basis of false and stigmatizing reasons publicized by the governmental employer implicates a protected liberty interest in the employee's reputation and ability to gain future employment. *See Buxton v. Plant City,* 871 F.2d 1037, 1042–43 (11th Cir.1989).[14] A

---

**13.** Only the *en banc* Court may overrule a prior panel decision. *See United States v. Machado,* 804 F.2d 1537, 1543 (11th Cir.1986).

**14.** The district court thus erred in holding, on the basis of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct.

1155, 47 L.Ed.2d 405 (1976), that an allegation of damage to reputation accompanying wrongful discharge "is insufficient to state a constitutional claim." *Doe,* 725 F.Supp. at 1217. *Paul* involved a claimed liberty interest resting on reputation alone, unconnected to any govern-

critical element of a claimed invasion of a reputational liberty interest, however, is the *falsity* of the government's asserted basis for the employment decision at issue. *See Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977); *Buxton*, 871 F.2d at 1042 & n. 4. Doe has never disputed that he does in fact carry the AIDS virus, the basis for the Navy's disputed "employment decisions" in this case. Because he does not claim falsity, he has failed to raise any "factual dispute ... which has some significant bearing on [his] reputation." *Codd*, 429 U.S. at 627, 97 S.Ct. at 884.

■ Because Doe's due process claim so clearly fails on the merits, we need not consider at any length the district court's initial finding that Doe's claim is unreviewable under *Mindes v. Seaman*, 453 F.2d 197, 201–02 (5th Cir.1971), which set forth a four-part balancing test governing the judicial reviewability of constitutional challenges to military personnel decisions. *Cf. Stinson*, 821 F.2d at 1540–41 (district court must apply *Mindes* analysis before reaching merits of constitutional claim).[15] We find nothing objectionable in the district court's application of *Mindes*, and we think it clear that under *Mindes* factors one and three, at least,[16] review of Doe's due process claim in this case is disfavored.

## C. Equitable Estoppel

■ Doe raises for the first time before this Court the argument that the Navy's past conduct toward him equitably estops it from denying him prospective reassignment to the NRCR program, relying heavily on the Ninth Circuit's recent decision in *Watkins v. United States Army*, 875 F.2d 699 (9th Cir.1989) (*en banc*). Because Doe failed to raise this contention before the district court, we need not address it on appeal. *Cf. In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1207 (11th Cir.1989) (issue not raised below may be considered where "pure question of law" is involved and refusal to consider it "would result in a

---

mental employment action. *See Paul*, 424 U.S. at 709–10, 96 S.Ct. at 1164–65; *cf. Green v. Brantley*, 895 F.2d 1387, 1393 (11th Cir.1990) ("[reputational] liberty interest survives even where ... the withdrawal of employment does not impinge on a recognizable property interest").

15. This Court in *Stinson* took the rather severe approach of reversing and remanding the district court's dismissal on the merits of a constitutional claim because the district court had not applied *Mindes* to determine whether the claim was reviewable in the first place. We reversed despite the fact that the issue on the merits was quite simple, the district court's disposition appeared plainly correct, and the district court's consideration of *Mindes* on remand could not possibly have led to a different result. *See Stinson*, 821 F.2d at 1541–43 (Henderson, J., specially concurring) (criticizing *Mindes* and suggesting disposition of plainly meritless constitutional claims "without resort to the cumbersome *Mindes* analysis"); *accord Watson v. Arkansas National Guard*, 886 F.2d 1004, 1009–10 (8th Cir.1989).

We note that despite the apparent assumption of *Stinson*, this Court and its predecessor have not always applied *Mindes* in constitutional challenges to military personnel decisions. The former Fifth Circuit, for example, failed to apply *Mindes* in *Sims v. Fox, supra*, decided only three years after *Mindes*. Furthermore, while *Mindes* refers to statutory as well as constitutional claims, it appears well established that

*Mindes* need not be applied before reaching the merits of a statutory claim against the military. *See Stinson*, 821 F.2d at 1539–40; *Smith*, 763 F.2d at 1324–25 (both rejecting statutory claims without resort to *Mindes* analysis). It would obviously be inappropriate for the federal courts to second-guess whatever balancing of policy interests might underlie a decision by Congress to subject the military to liability under a legal standard going beyond constitutional requirements. Such balancing by the courts is appropriate and often necessary with regard to constitutional claims, however, because individual constitutional rights must be reconciled with Congress's constitutional authority to "make Rules for the Government and Regulation of the land and naval Forces." Const. Art. I, § 8, cl. 14.

16. Factor one relates to "[t]he nature and strength of the plaintiff's challenge to the military determination," and notes that "[a]n obviously tenuous claim of any sort must be weighted in favor of declining review." *Mindes*, 453 F.2d at 201. Factor three relates to "[t]he type and degree of anticipated interference with the military function." *Id.* It is obvious that finding a protected property interest in not being denied acceptance to a military program such as the NRCR program—with the presumptive consequence of requiring some kind of due process hearing for every rejected applicant—would threaten substantial interference with the military's personnel selection processes.

miscarriage of justice"). In the interest of responding fully to all aspects of Doe's claim, however, we note that Doe's analogy to *Watkins* is strained indeed. In *Watkins*, the Army had refused to reenlist a career soldier with an outstanding record solely on the basis of his admitted homosexuality, despite the fact that the Army had repeatedly reenlisted him over the previous fifteen years, in violation of its own regulations and with full knowledge of his homosexual orientation, which he had candidly and repeatedly acknowledged over the years. *See Watkins*, 875 F.2d at 701–03. The Ninth Circuit held that the Army had induced Watkins's reliance on its previous course of conduct and was therefore equitably estopped from refusing to reenlist him. *See id.* at 709–11. In this case, by contrast, Doe has never relied to his detriment on any violation by the Navy of its own regulations. Doe *challenged* the Navy's termination of his NRCR assignment in 1986 as being in violation of the 1985 regulation, and the BCNR ultimately agreed that under that regulation Doe was entitled to serve out his term through September 30, 1987. Thereafter, the Navy has refused to reenlist Doe in the NRCR program, in accordance with its 1987 regulation. Unlike the situation in *Watkins*, the Navy has never led Doe to believe that he has any expectation of serving in the NRCR program in violation of the regulations excluding HIV-positive individuals. Doe's estoppel claim thus lacks merit.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.