[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15710
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 2, 2011
JOHN LEY
CLERK

D.C. Docket No. 7:08-cv-00156-HL

JENNY I. MORALES,

                                                          Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF HUMAN RESOURCES,
Department of Human Resources, Division of Family &
Children Services,

                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 2, 2011)

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Jenny Morales appeals from the district court's grant of summary judgment in favor of the Georgia Department of Human Resources, Division of Family and Children Services ("DFCS") in her disability discrimination and retaliation suit under the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 and 42 U.S.C. § 1981. First, Morales argues that the district court erred when it dismissed her termination claim because the Rehabilitation Act did not require that she exhaust her administrative remedies before filing suit. Second, Morales argues that, contrary to the court's finding, she was disabled in the major life activity of walking because she had medical restrictions that limited her walking. Third, Morales contends that DFCS regarded her as disabled, which it showed when it placed her on Family and Medical Leave ("FML") because it could not accommodate her medical restrictions. Fourth, Morales asserts that she established a *prima facie* case of retaliation by showing close temporal proximity between her charges of discrimination and her written reprimands, placement on FML, and termination. Finally, Morales contends that DFCS's reasons for placing Morales on leave and firing her were pretextual, as evidenced by DFCS's actions following Morales's charges of discrimination.

"[W]e review the granting of summary judgment *de novo*, and the district court's findings of fact for clear error." *Robinson v. Tyson Foods, Inc.*, 595 F.3d

2

1269, 1273 (11th Cir. 2010). If the movant satisfies the burden of production showing that there is no genuine issue of fact, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted). "We draw all factual inferences in a light most favorable to the non-moving party." *Id.* Nevertheless, the non-moving party cannot create a genuine issue of material fact through speculation. *Id.* Moreover, the non-moving party cannot create a genuine issue through evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## I.     Termination Claim

The Rehabilitation Act prohibits federal agencies from discriminating in employment against qualified individuals with disabilities. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); 29 U.S.C. § 794(a). "[P]rivate actions against federal government employers under the [Rehabilitation] Act, whether brought under section 791 or 794, must satisfy the requirement of exhaustion of administrative remedies in the manner prescribed by section [794a(a)(1)] and thus by Title VII." *Doe v. Garrett*, 903 F.2d 1455, 1461 (11th Cir. 1990) (brackets in original) (quotation omitted). However, an action against a non-federal employer

3

under the Rehabilitation Act does not require exhaustion of administrative remedies. *See id.* at 1459-61; 29 U.S.C. § 794a(a)(2); *Gean v. Hattaway*, 330 F.3d 758, 774-75 (6th Cir. 2003) (holding that suits against non-federal employers under § 794a(a)(2) do not require exhaustion of administrative remedies).

DFCS has conceded on appeal that the district court erred when it dismissed Morales's termination claim for failure to exhaust. In any event, we may affirm a judgment on any legal ground, regardless of the grounds addressed and relied upon by the district court. *See National R.R. Passenger Corp. v. Rountree Transport and Rigging*, 286 F.3d 1233, 1263 (11th Cir. 2002) (explaining that an appellate court may affirm the district court's grant of summary judgment "as long as the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted, or rejected by the district court") (quotation omitted). As discussed below, DFCS presented legitimate, non-retaliatory reasons for terminating Morales, and Morales failed to show that the reasons were pretextual.

II.    **Whether Morales Was Disabled**

"The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). "[T]hus, cases involving the ADA are

4

precedent for those involving the Rehabilitation Act." *Id.*; *see also* 29 U.S.C. § 794(d).

"In order to establish a *prima facie* case of discrimination under the ADA, [the plaintiff] must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); 42 U.S.C. § 12112(a). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[1] On the issue of whether an impairment substantially limits a major life activity, "[w]e are guided . . . by the regulations promulgated by the Equal Employment Opportunity Commission, which state that major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Cash*, 231 F.3d at 1305 (quotation omitted). The ADA defines a "qualified individual"

---

[1] Congress amended the ADA by enacting the ADA Amendments Act ("ADAAA"), effective January 1, 2009. *See* Pub. L. No. 110-325, 122 Stat. 3553. Among other things, the Act expanded the definition of disability. *Id.* § 4. The district court explicitly chose not to apply the changes in the ADAAA retroactively to Morales's claims. On appeal, Morales has not argued that the court erred in this decision or that the ADAAA should be applied retroactively. Thus, we need not decide in this case whether the ADAAA applies retroactively. *See Horsley v. Feldt*, 304 F.3d 1125, 1131 n.1 (11th Cir. 2002) (holding that we need not address an issue that was not raised by the appellant on appeal).

as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8).

As an initial matter, Morales fails to raise any arguments regarding her disability claims for a mental impairment, back injury, standing, and lifting, and thus, she has abandoned these claims. *See Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) (holding that "[i]ssues not clearly raised in the briefs are considered abandoned").

The court did not err in finding that Morales was not disabled. She did not request a handicap permit or special parking space, she used a cane to mitigate her impairment, she was released back to work by her doctor a number of times, and she only received an impairment rating of nine percent for her lower extremity and four percent overall.

### III. Whether Morales Was Regarded As Disabled

Under the EEOC regulations interpreting the ADA, to be "regarded as" having an impairment means that an individual:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

*D'Angelo v. Conagra Foods, Inc.*, 422 F.3d 1220, 1228 (11th Cir. 2005) (citing 29 C.F.R. § 1630.2(l)). "In order for [the plaintiff] to establish that [the defendant] regarded her as substantially limited in her ability to work, she must prove that [the defendant] considered her as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Cash*, 231 F.3d at 1306 (quotation omitted).

The evidence did not show that DFCS regarded Morales as disabled. Although DFCS placed Morales on FML because it could not accommodate her in her current position, DFCS never said that it regarded Morales as incapable of working a broad range of jobs. Furthermore, DFCS did not need to provide Morales with a different position because (1) Morales never asked for a voluntary demotion and (2) DFCS did not have an accommodating position for her. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir.1997) (holding that

7

reassignment is only a reasonable accommodation if a position for which the plaintiff is qualified is available).

IV. *Prima Facie* **Retaliation**

The Rehabilitation Act incorporates the anti-retaliation provision from § 12203(a) of the ADA. 29 U.S.C. §§ 791(g), 793(d), 794(d). Retaliation claims under the ADA are analyzed under the framework of Title VII. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (holding that "[w]e assess ADA retaliation claims under the same framework we employ for retaliation claims under Title VII") (quotation omitted).

Title VII prohibits an employer from retaliating against an employee for filing a charge or reporting discrimination. 42 U.S.C. § 2000e-3(a). A retaliation claim is analyzed according to the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Goldsmith v. City of Artmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993).

To establish a *prima facie* case for retaliation, a plaintiff may show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) the adverse employment action was causally related to

8

the protected activity. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

Under the first prong, an employee engages in statutorily protected activity if he has opposed any employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a); *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999). As to the second prong of a *prima facie* case, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington Northern and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotations omitted). In *Burlington Northern*, the Supreme Court clarified that "[t]he antiretaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67, 126 S.Ct. at 2414. The acts must be material and significant and not trivial. *Id.* at 68, 126 S.Ct. at 2415.

Under the third prong, we construe the causal-relationship element broadly, so that a plaintiff simply has to demonstrate that the protected activity and adverse action are not completely unrelated. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). A "close temporal proximity" between the employee's protected

9

activity and adverse actions may be sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

None of Morales's evaluations or reprimands were (1) adverse or (2) causally connected to her charges of discrimination. Morales failed to show that the Documentation of Counseling was a material injury or harm. There is no evidence that the Documentation affected her salary or job status. Further, she failed to show that the Documentation would have affected any of her future pay raises. Additionally, DFCS's removal of Morales from the Medicaid application position did not dissuade Morales from making another charge of discrimination on May 13, 2008. Moreover, the move out of the Medicaid position occurred over four months after her initial charge, and she thus fails to show any temporal proximity or causal connection between the two. Similarly, the uncontested evidence shows that the Documentation of Counseling was contemplated before

she filed her second charge.[2]  Thus, Morales failed to establish a *prima facie* case of retaliation as to her evaluations and reprimands.

### V.    Pretext

Under the *McDonnell Douglas* framework, if the plaintiff establishes a *prima facie* case of discrimination, then the defendant must show a legitimate, non-discriminatory reason for its employment action.  *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006).  If the defendant's reason is legitimate and non-discriminatory, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination.  *Id.*

DFCS placed Morales on FML because it could not accommodate her restriction of walking only one hour per day.  Contrary to her contention, Morales could not have been accommodated by being placed in another position because DFCS had filled all of its positions and Morales never asked for a voluntary demotion.  Furthermore, DFCS fired Morales because she failed to contact DFCS or return to work at the end of her FML.  Morales provided no evidence that DFCS's reasons for placing her on leave and firing her were pretextual.

---

[2]    Morales's complaint cited her filing of the charge as the instigating event that caused DFCS to retaliate against her.  It was not until her response to DFCS's motion for summary judgment that Morales claimed she had warned in April that she would file again.  However, a plaintiff may not amend her complaint through argument in a brief opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

11

Accordingly, upon review of the record and consideration of the parties'

briefs, we affirm the district court's grant of summary judgment in favor of DFCS.

**AFFIRMED.**[3]

---

[3]  Morales's request for oral argument is denied.