Bonnie W. MITCHELL, Plaintiff,

v.

Craven CROWELL, et al., Defendants.

No. CV 95–B–2740–NW.

United States District Court,
N.D. Alabama,
Northwestern Division.

Sept. 30, 1996.

Deborah A. Mattison, Sandra B. Reiss, Gordon Silberman Wiggins & Childs, Birmingham, AL, for Plaintiff.

A. Jackson Woodall, Thomas F. Fine, Philip J. Pfeifer, Tennessee Valley Authority, Knoxville, TN, for Defendants.

## MEMORANDUM OPINION

BLACKBURN, District Judge.

This matter is currently before the court on defendants'[1] motion to dismiss, which the court, by Order dated January 16, 1996, converted into a motion for summary judgment. Upon consideration of the record, the submissions of both parties, the argument of counsel, and the relevant law, the court is of the opinion that defendants' motion is due to be granted.

This suit arises out of a decision by defendant Tennessee Valley Authority ("TVA") to terminate plaintiff Bonnie Mitchell from the position of Public Safety Officer at its Browns Ferry Nuclear Plant (the "Plant"). Plaintiff alleges that defendant violated §§ 501 and 504 of the Rehabilitation Act of 1973 (the "Act"), by failing to provide her with reasonable accommodation, and subsequently terminating her after she was unable to obtain the required security clearance.

## FACTUAL SUMMARY

The facts of this case are relatively straightforward and undisputed. In 1980, the TVA hired Bonnie Mitchell as a Clerk Monitor in the security department at its Browns Ferry Nuclear Plant. (Am. Compl. at ¶ 6.) After holding the position of Clerk Monitor for four years, Ms. Mitchell applied for a Public Safety Officer position in the security force protecting Browns Ferry. (*Id.*) A Public Safety Officer is responsible for the following duties: "providing armed security at the facility 'for the protection of TVA property, employees, and the general public'; preventing 'trespassing, theft, sabotage, vandalism, and acts of violence' and maintaining 'order among employees and visitors on site'; and functioning 'under regulatory guidelines in order to maintain the plant's operating license.'" (Def.'s Mot. to Dismiss Attach. 2 at 4–5 (Recommended Findings and Conclusions of the Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge ("ALJ").))[2]

Pursuant to Nuclear Regulatory Commission regulations, Public Safety Officers at Browns Ferry are required to, *inter alia*, pass a psychological examination "for unescorted access to a nuclear plant." (i.e. security clearance); this examination includes a clinical interview by a TVA psychologist. (*Id.* at 5.) After undergoing the psychological examination, and obtaining the requisite security clearance, Ms. Mitchell assumed the position of Public Safety Officer in 1984. (*Id.*)

Once an individual is hired as a Public Safety Officer, he or she must maintain security clearance, which is, in part, contingent upon a periodic psychological evaluation. (*Id.*) Consequently, throughout her tenure as a Public Safety Officer at Browns Ferry, which lasted from 1984 until January 1994, Ms. Mitchell underwent a minimum of eight psychological evaluations. (*Id.* 5–9.) While some of these evaluations were per-

---

1. Since "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) (citations and internal quotations omitted), the court will refer to the Tennessee Valley Authority as the defendant in this case.

2. Attachment 2 contained two documents: (1) A letter dated August 14, 1995 to Ms. Mitchell from Clarence B. Williams, Director Equal Opportunity Compliance, which constituted the Final Agency Decision of TVA with regard to plaintiff's complaints of discrimination, and (2) Recommended Findings and Conclusions of the Administrative Law Judge.

formed based upon TVA's periodic review schedule, others were performed because Ms. Mitchell's supervisors had concerns about her psychological well-being, and specifically requested that she be re-evaluated. (*Id.*) Although on one occasion plaintiff's clearance was subject to the constraint that she not be able to carry a firearm until the completion of her psychological examination, in every instance in which she was evaluated, with the exception of her last, she was ultimately given full security clearance. (*Id.*)

During her tenure as a Public Safety Officer, Ms. Mitchell received fully adequate reviews, and was, at times, commended for her performance. On one occasion, she received a letter from her supervisor, Ralph Jackson, complimenting her on her ability to handle a rifle. (Evid. Sub. by Pl., Tab 1, Mitchell Aff. ¶ 5.)

In December 1992, plaintiff's psychiatrist, Dr. Thomas Sahfer, diagnosed plaintiff with dysthymia, a chronic low-level depression; he placed her on medication, and she continued to work as a Public Safety Officer at the Browns Ferry Facility. (Am.Compl.¶ 8.)

On May 15, 1993, plaintiff reported to work with a bad headache. (Am. Compl. at ¶ 9.) As the day progressed, the headache worsened, and, eventually, plaintiff asked to be taken to the infirmary. (*Id.*) Although defendant asserts that plaintiff experienced a manic episode while on duty on May 15, 1993, (Def.'s Br. in Supp. of Mot. to Dismiss at 3), plaintiff disputes this allegation, and, instead, claims that she was not on duty when the manic incident occurred. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. at 3.) In any event, as a result of her condition, plaintiff was taken to the Decatur General Hospital, where she voluntarily admitted herself for psychiatric treatment. (Am. Compl. at ¶ 9.)

Plaintiff remained hospitalized from May 15, 1993 until June 11, 1993, when her treating psychiatrist, Dr. George Twente, discharged her with the diagnosis of "Bipolar disorder, maniac, severe with psychotic symptoms." (Am. Compl. at ¶ 10.) Dr. Twente concluded that Ms Mitchell's episode was an isolated incident, which resulted from an "unfortunate mixture of medications," Zoloft for depression and Cortisone for her allergies, prescribed by two different physicians. (Evid. Sub. by Pl., Tab 4; Twente Aff. ¶¶ 4, 5.) This conclusion was based partly on the fact that plaintiff had no prior history of this type of episode, and has evinced no symptoms of this condition since the incident occurred. (*Id.* at ¶ 5.)

On September 9, 1993, Dr. Twente, who was aware of plaintiff's duties and job responsibilities, wrote a letter releasing plaintiff to return to work without any limitations. (*Id.* at ¶ 9.)[3] Prior to returning to work, however, Nuclear Regulatory Commission regulations required plaintiff to undergo a psychological evaluation to determine whether the reactivation of her security clearance was warranted. (Am. Compl. at ¶ 11; (Def.'s Br. in Supp. of Mot. to Dismiss at 3.)) When plaintiff returned to the Browns Ferry Plant, she reported to the medical office where Dr. J.B. Dyer, a TVA clinical psychologist, interviewed her and administered the Minnesota Multiphasic Personality Inventory ("MMPI"). (Am. Compl. at ¶ 11.) In a letter dated September 20, 1993, Dr. Dyer requested plaintiff's treatment summary from Dr. Twente to help determine plaintiff's "suitability for psychological approval for unescorted nuclear access." (Def.'s Mot. to Dismiss Attach. 2 at 11 (Recommended Findings and Conclusions of the EEOC ALJ.))

Thereafter, in a letter dated October 14, 1993, and notwithstanding Dr. Dyer's request for additional information regarding plaintiff's psychological condition, Dr. Sajwaj ad-

---

**3.** The Affidavit of Dr. Twente submitted by plaintiff in opposition to defendants' motion stated: I released Ms. Mitchell to return to her former position as Public Safety Officer at the Browns' Ferry Nuclear location of the TVA. As I have treated other Public Safety Officers, and have dealt with their need to get an [sic] security clearance, I am familiar with their duties and aware of their responsibilities. Moreover, I

live in the fallout area of the Browns' Ferry Nuclear facility, so I am especially cognizant of the risks inherent in releasing a patient back into the workforce who may not be ready to return to full duty. I had no reservations about releasing Ms. Mitchell to return to work or the fact that she would be carrying a gun. (Evid. Sub. by Pl., Tab 4, Twente Aff. ¶ 9.)

vised Ms. Mitchell that the recommendation had been made to withhold psychological approval for the special nuclear clearances for security officer and unescorted access. (*Id.*) Dr. Sajwaj also advised plaintiff of her appeal rights regarding the denial of her security clearance, which included a review of Dr. Sajwaj's decision by an independent psychologist, who would, in turn, make a recommendation to an impartial TVA manager. (*Id.* at 12; Evid. Sub. by Plaintiff, Tab 7 (Letter from Dr. Sajwaj to Mitchell.)) The final decision on Ms. Mitchell's security clearance rested with the impartial manager. (*Id.*)

On October 15, 1993, Dr. Twente wrote to officials at Browns Ferry and reiterated his opinion that plaintiff was able to resume her duties as a Public Safety Officer. (Am. Compl. at ¶ 13.) Despite Dr. Twente's letter, however, independent psychologist, Thomas W. Ford, Ph.D., reviewed Dr. Sajwaj's decision, and upheld the denial of Ms. Mitchell's psychological clearance. (Def.'s Mot. to Dismiss Attach. 2 at 12–13 (Recommended Findings and Conclusions of the EEOC ALJ.))

On October 26, 1993, Dr. Stephen P. Chardos, Manager, Behavioral Sciences Department, issued a decision upholding the recommendation to deny the psychological component of Ms. Mitchell's medical approval. (*Id.* at 13.) Based upon his review, Dr. Chardos found that plaintiff did "not meet the psychological standards for security officer duty and unescorted nuclear access clearance." (*Id.*)

After learning of the denial of her security clearance, plaintiff contacted Browns Ferry Human Resources Manager, Stephen Moss, to request assistance in finding a job that did not require a security clearance. (Am. Compl. at ¶ 14.) Although Mr. Moss stated that he did not "believe another position would be available for her at a different facility," he eventually said that he would look into the matter. (Def.'s Mot. to Dismiss Attach. 2 at 14 (Recommended Findings and Conclusions of the EEOC ALJ.)) Later, Mr. Moss asked plaintiff's supervisor, James Brazell, Site Security Manager, to inquire into

positions at the Muscle Shoals Fertilizer Development Center. (*Id.*; Pl.'s Br. in Opp'n to Mot. for Summ. J at 6 fn.7.)

On or around December 3, 1993, and despite several phone calls from Ms. Mitchell to Mr. Moss regarding the possibility of reassignment, plaintiff received a letter of termination from James E. Brazell; the letter stated that "[t]his is to notify you that I am terminating your employment as a Nuclear Security Officer effective January, 4, 1994. The reason for this action is that you do not meet the job requirements of maintaining S–1 clearance. Maintaining an S–1 clearance is a condition of your employment." (Evid. Sub. by Pl., Tab 13; Tab 1 (Mitchell Aff. ¶ 18.))

Thereafter, in January 1994, plaintiff contacted an Equal Opportunity Counselor regarding her claims of discrimination. On March 28, 1994, plaintiff filed a formal complaint of discrimination with the TVA Equal Opportunity Compliance Office, in which she alleged mental disability and reprisal discrimination.[4] (Def.'s Mot. to Dismiss Attach. 2 at 2 (Recommended Findings and Conclusions of the EEOC ALJ.))

On August 11, 1994, plaintiff requested a hearing before an ALJ appointed by the EEOC in accordance with 29 C.F.R. §§ 1614.108 and 1614.109. (*Id.* at 2.) After a hearing on plaintiff's allegations brought pursuant to § 501 of the Rehabilitation Act of 1973, as amended, and Title VII of the Civil Rights Act of 1964, as amended, the ALJ found that plaintiff "failed to establish, by a preponderance of the evidence, that the Agency discriminated against her on the basis of her disability ... or her prior EEO activity...." (*Id.* at 32). Thereafter, plaintiff filed suit in this court pursuing claims under §§ 501 and 504 of the Rehabilitation Act of 1973. 29 U.S.C. §§ 701–797b (1994). (Compl. at 1.)

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, deposi-

---

**4.** In her Equal Employment Opportunity Complaint, Ms. Mitchell alleged reprisal discrimination for previous complaints regarding sexual

harassment and sexual discrimination. These events, however, allegedly occurred some time ago and are not raised by plaintiff in this lawsuit.

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

■ If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted); *accord Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir.1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

## DISCUSSION

The Rehabilitation Act of 1973 was "enacted to prevent old-fashioned and unfounded prejudices against disabled persons from interfering with those individuals' rights to enjoy the same privileges and duties afforded to all United States citizens." *Galloway v. Superior Court of Dist. of Columbia,* 816 F.Supp. 12, 20 (D.D.C.1993). In the present action, plaintiff alleges that defendant violated §§ 501(b) and 504(a) of the Act when it failed to accommodate her after she was unable to obtain the requisite security clearance.[5] Before addressing the merits of plaintiff's claims, however, the court first considers defendant's contention that plaintiff is precluded from raising her reasonable accommodation claim at this stage because she failed to plead with specificity to what jobs she contends TVA should have reassigned her. The resolution of this issue ultimately turns upon the question of whether plaintiff satisfied the pleading requirements imposed by FED. R. CIV. P. 8(a).

## I. Whether Plaintiff Satisfied the Pleading Requirements of FED. R. CIV. P. 8(a)

■ Under FED. R. CIV. P. 8(a) "[a] pleading which sets forth a claim for relief, ..., shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...." "[F]or better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can." *In re Southeast Banking Corp.,* 69 F.3d 1539, 1551

---

5. Although both the complaint and the first amended complaint contain allegations of discrimination based upon the denial of plaintiff's security clearance, in its brief in opposition to defendant's motion for summary judgment, plaintiff withdraws this claim, and, instead, pursues claims of discrimination based upon defendant's "failure to reasonably accommodate" and its decision to terminate her. Since plaintiff's allegations are, in essence, based upon defendant's alleged failure to accommodate, the court will simply refer to her claims as such.

(11th Cir.1995). "[T]he complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Quality Foods v. Latin Am. Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir.1983) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957)). A review of plaintiff's pleadings reveals that she has satisfied the "liberal pleading requirements" imposed by Rule 8(a).

First, in the introduction to her complaint and first amended complaint, plaintiff maintains that defendant discriminated against her "based on her disability in failing to provide her with reasonable accommodation, denying her a clearance and subsequently terminating her on the basis of disability." Moreover, in paragraphs five, fourteen, fifteen, nineteen, and twenty-one, plaintiff specifically alleges that defendant failed to accommodate her. For example, paragraph twenty-one asserts that "[d]efendants have ... failed to accommodate plaintiff." This allegation, when considered alone, or with all of the other instances in which plaintiff refers to "reasonable accommodation," provided sufficient notice to defendant that plaintiff sought to recover for the alleged failure to accommodate.

Moreover, the cases defendant relies upon to support its position on this issue are inapplicable. First, in *Coon v. Georgia Pac. Corp.*, 829 F.2d 1563 (11th Cir.1987), the Eleventh Circuit found that "plaintiff's complaint included only her claim of discriminatory denial of promotion in 1979." *Id.* at 1569. In her "pretrial stipulation," however, plaintiff attempted to expand upon the issues for trial by listing several other instances of alleged discrimination. *Id.* The Eleventh Circuit affirmed the lower court's decision declining to allow plaintiff to try claims which were not in the pleadings. Here, however, unlike in *Georgia Pac. Corp.*, plaintiff specifically enumerated three alleged instances of discrimination in her complaint when she stated: "Defendants discriminated against her based on her disability in failing to provide her with reasonable accommodation, denying her a clearance and subsequently terminating her on the basis of disability." (Am. Compl. at 1.)

Similarly, defendants' reliance on *Ogletree v. McNamara*, 449 F.2d 93 (6th Cir.1971), is equally misplaced. In *Ogletree*, the plaintiffs' complaint failed "to allege facts as opposed to generalities and conclusions." *Id.* at 98. The court found that "[l]iberal as are the federal rules of pleading, something more than conclusory allegation of systematic racial discrimination is required." *Id.* Here, however, plaintiff offered more than generalities and conclusory allegations of discrimination; she, instead, offered the "when, how, to whom, and with what results such discrimination" had allegedly been applied. *Id.*

As additional support regarding its argument that plaintiff failed to plead with sufficient specificity, defendant cites *Peterson v. Department of Navy*, 687 F.Supp. 713 (D.N.H.1988). As plaintiff correctly points out, the primary issue in *Peterson* was not whether the plaintiff satisfied Rule 8(a) but was, instead, whether the court had authority to review the merits of a security clearance denial by the Department of the Navy. In resolving this issue in favor of the defendant, the court prevented plaintiff from raising arguments he failed to either raise at the administrative level or allege in his pleadings. In this case, however, plaintiff's reasonable accommodation claim was addressed at the administrative level and, as stated above, was alleged in her pleadings. Although she could have chosen to plead with greater precision by referencing specific positions to which she could have been transferred or reassigned, the court declines to adopt a requirement not contemplated in FED. R. CIV. P. 8(a). As a result, the court now turns to the merits of plaintiff's allegations.

## II. Plaintiff's Claims Under §§ 501 and 504 of the Rehabilitation Act

Plaintiff filed suit alleging violations of §§ 501(b) and 504(a) of the Rehabilitation Act of 1973. Although some circuits have determined that " § 501(b) provides the only cause of action under the [Rehabilitation] Act for federal employees who suffer disability discrimination in the course of their employment," *Williams v. Widnall*, 79 F.3d 1003, 1004 (10th Cir.1996) (citing *Johnson v. Unit-*

*ed States Postal Serv.*, 861 F.2d 1475, 1478 (10th Cir.1988)), *(cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989)), in the Eleventh Circuit, a federal employee may bring suit under §§ 501(b) and 504(a). *Doe v. Garrett,* 903 F.2d 1455 (11th Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). Because the elements of proof on these two distinct causes of action are essentially the same, the court will evaluate both of plaintiff's claims under the standards courts have delineated for § 504(a).[6]

■ Section 504(a) of the Rehabilitation Act provides in pertinent part: "No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or subjected to discrimination under any ... program or activity conducted by an Executive Agency of the United States...." 29 U.S.C. § 794(a).[7] To establish a prima facie case of disability discrimination, plaintiff must demonstrate that she is: (1) disabled within the meaning of the Act and the relevant regulations, (2) is "otherwise qualified" for the position in question, (3) worked for a Program or activity conducted by an Executive agency and (4) was adversely treated solely because of her disability. *Jackson v. Veterans Admin.,* 22 F.3d 277, 278 (11th Cir.1994) (citation omitted), *reh'g and suggestion for reh'g en banc denied,* 30 F.3d 1500 (1994), *cert. dismissed,* 513 U.S. 1052, 115 S.Ct. 657, 130 L.Ed.2d 560 (1994). Since it is undisputed that the TVA "is considered an agency of the executive branch," *Hill v. Tennessee Valley Auth.,* 842 F.Supp. 1413, 1416 (N.D.Ala.1993), plaintiff must only produce

substantial evidence as to elements one, two, and four.

First, regarding element one, an individual with a disability is defined as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). In its brief in support of its motion and in its reply, defendant does not contest that plaintiff is disabled within the meaning of the Act. Moreover, in the final agency decision regarding plaintiff's complaint, the TVA agreed with the ALJ's finding that plaintiff is disabled as defined by the Act. Therefore, for summary judgment purposes, the court finds that plaintiff satisfies the statutory definition of an individual with a disability.

■ In order to assess whether plaintiff has satisfied the second prong of the four part test, the court must conduct a two-step inquiry. Under step one, an evaluation is made to determine whether the plaintiff is "otherwise qualified." *Martinez v. School Bd. of Hillsborough County, Fla.,* 861 F.2d 1502, 1505 (11th Cir.1988). "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). "In the employment context, an otherwise qualified person is one who can perform 'the essential functions of the job in question.'" *School Bd. v. Arline,* 480 U.S. 273, 287, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987) (citing 45 C.F.R. § 84.3(k) (1985)), *reh'g denied,* 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1987).

**6.** Plaintiff claims, and defendant fails to contest, that exhaustion of administrative remedies is not required under § 504(a). In *Garrett,* however, the Eleventh Circuit held that "private actions against federal government employers ..., whether brought under section 791 or 794, must satisfy" the requirement of exhaustion of administrative remedies in the manner prescribed by section [794a(a)(1)] and thus by Title VII. *Id.* at 1461 (citation omitted). Although the ALJ only considered whether defendant's actions violated § 501, the court holds that plaintiff's § 504 claim is sufficiently "like or related to the allegations contained in the charge and growing out of such

allegation during the pendency of the case before the Commission," so as to allow her to raise her § 504 claim here. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970). (citation omitted).

**7.** In 1992, Congress amended the Rehabilitation Act to substitute references to "handicap" with the word "disability." *See* Pub.L. 102–569, § 102(p)(32). References to the term "handicap" in the regulations, however, have not yet been changed.

If Ms. Mitchell is unable to demonstrate that she is "otherwise qualified," the court proceeds to step-two to determine "whether reasonable accommodation would make ... [her] otherwise qualified." *School Bd. of Hillsborough County Fla.*, 861 F.2d at 1505 (11th Cir.1988) (alteration added) (citing *School Bd. v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987)); *See also Harris v. Thigpen*, 941 F.2d 1495, 1525 (11th Cir.1991) (applying same two-part test to determine if an individual is otherwise qualified).

When proceeding through this two-step inquiry, it is important to remember the relative burdens borne by each side. "First, the plaintiff bears the burden of proving that she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified." *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 139 (2nd Cir.1995). In addition, as to whether a particular accommodation is reasonable, "[i]t is enough for plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* at 138. If plaintiff satisfies this prima facie burden, "the burden shifts to the employer to show that no reasonable accommodation is possible." *Gilbert v. Frank*, 949 F.2d 637, 642 (2nd Cir.1991). "At this point the defendant's burden of persuading the fact finder that the proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation

would cause it to suffer an undue hardship."[8] *Borkowski*, 63 F.3d at 138.

Applying step-one of the above standard, the court finds that plaintiff has not demonstrated that she was otherwise qualified for the position of Public Safety Officer. It is undisputed that Nuclear Regulatory Commission regulations require Public Safety Officers to maintain a security clearance; this clearance is, in part, contingent upon a satisfactory psychological evaluation by a TVA psychologist. When plaintiff was unable to pass the psychological evaluation, and reactivate her security clearance after undergoing months of psychological treatment, she could no longer gain access to the Browns Ferry Plant. Obviously, plaintiff's inability to access the Plant rendered it impossible for her to perform any functions of the job, much less the essential ones.

Furthermore, under step-two, this court is without authority to review TVA's decision to deny plaintiff's security clearance, to require defendant to allow plaintiff to remain in the position without a security clearance, or to alter the position so as not to require a security clearance. In *Department of Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Court held that the grant or denial of security clearance to a particular employee is a sensitive and inherently discretionary judgment call that is committed by law to the appropriate Executive Branch agency having the necessary expertise in protecting classified information. Because plaintiff's position required a security clearance which she was unable to obtain, reasonable accommodation is not available for the Public Safety Officer position.[9] *See*

8. "[I]n view of the lack of any direct statutory guidance, .... " it is not surprising that courts "have found the assignment of the burdens of production and persuasion particularly difficult as to reasonable accommodation." *Borkowski*, 63 F.3d at 136. As a result of this ambiguity, there is a split among circuits regarding the proper approach to take. For example, in the Fifth Circuit the burden of persuasion on the issue of reasonable accommodation is placed on the employer. *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 308 (5th Cir.1981). In the Second Circuit, however, the plaintiff bears the burden of persuasion of proving that she can either meet the requirements of the job without assistance, or that an accommodation exists that permits plaintiff to perform the job's essential

functions. *Borkowski*, 63 F.3d at 137. Because the approach taken by the Fifth Circuit "[i]n effect, ... puts on the employer the burden of demonstrating that the plaintiff is not otherwise qualified for employment ..., *id.*", and because the Eleventh Circuit has not specifically addressed this issue, this court is of the opinion that the Second Circuit's approach as outlined in *Borkowski* is the better approach. Therefore, the court follows the burden-shifting approach outlined in *Borkowski*.

9. After finding that plaintiff fit within the protections of the Act in that the Agency perceived her to be disabled, the ALJ considering plaintiffs claims went on to hold that the agency was not

*Skees v. Department of the Navy,* 864 F.2d 1576, 1578 (Fed.Cir.1989) ("If [Merit Systems Protection] Board cannot review the employee's loss of security clearance, it is even further beyond question that it cannot review Navy's judgment that the position itself requires clearance.")

■ In the usual case, the court's inquiry would end at this point, but here, plaintiff is aided by 29 C.F.R. § 1614.203(g), which, in relevant part, provides:

When a nonprobationary employee becomes unable to perform the essential functions of his or her position even with reasonable accommodation due to a handicap, an agency shall offer to reassign the individual to a funded vacant position located in the same commuting area and serviced by the same **appointing authority,** the essential functions of which the individual would be able to perform with reasonable accommodation if necessary unless the agency can demonstrate that the reassignment would impose an undue hardship on the operation of the program. In the absence of a position at the same grade or level, an offer of reassignment to a vacant position at the highest available grade or level below the employee's current grade or level shall be required. . . .

*Id.* (emphasis added). As a threshold matter, the parties strongly contest the meaning of the term "appointing authority" in the above regulation. The court, however, finds that the supplementary comments accompanying the regulation provide significant guidance as to what the agency intended when it drafted § 1614.203(g).

Although this regulation did not contain the words "appointing authority" when originally proposed, 54 Fed.Reg. 45,755 (1989) (proposed October 31, 1989), during the comment phase, some agencies "argued that it would be impractical and extremely difficult to reassign employees from one agency component to another where such components have separate personnel authority." 57 Fed. Reg. 12,638 (1992) (EEOC comments regarding coverage of the Rehabilitation Act) (April 10, 1992). As a result of these comments, the EEOC revised the regulation "to only require reassignment within the part(s) of the agency located in the same commuting area that share the same personnel appointing authority."[10] *Id.*

In her Recommended Findings and Conclusions, the ALJ hearing plaintiff's claim found that "the appointing authority, with regard to reasonable accommodation purposes only, is limited to the nuclear organization of the TVA." (Def.'s Mot. to Dismiss Attach. 2 at 30 (Recommended Findings and Conclusions of the EEOC ALJ.)) The court believes that the ALJ's finding on this issue is the correct interpretation of § 1614.203(g), and holds that the appointing authority is limited to the nuclear organization of the TVA.[11]

required to reasonably accommodate the plaintiff because "[o]ne who is **perceived** as being disabled is not entitled to a reasonable accommodation absent an actual disability." (Def.'s Mot. to Dismiss Attach. 2 at 30 (Recommended Findings and Conclusions of the EEOC ALJ)) (citation omitted) (emphasis added). In *Harris v. Thigpen,* 941 F.2d 1495 (11th Cir.1991), the Eleventh Circuit held that an HIV seropositivity diagnosis was a handicap under the Rehabilitation Act, because the correctional system perceived inmates as such. *Id.* at 1524. Nevertheless, the prison had an "affirmative obligation under the Act to pursue and implement such alternative, reasonable accommodations as are possible. . . ." *Id.* at 1527. In most cases, however, it will be practically impossible for an employer to accommodate an individual who is disabled based upon the perceptions of others. In the present case, because the court lacks the authority to require defendant to accommodate plaintiff in the Public Safety Officer position, the court need not decide the issue of whether one who is perceived as "disabled" is entitled to reasonable accommodation. *See Biddle v. Rubin,* 1996 WL 14001, No. 95 C 1505, (N.D.Ill. Jan. 9, 1996).

**10.** Although plaintiff maintains that there is "clear and persuasive testimony and evidence . . . that transfer to *any facility* within the TVA is a common practice," (Pl.'s Rule 56(f) Mot. at 3.) (emphasis in original), the issue in this case is not common practice, but is, instead, the scope of the TVA's transfer *obligations* under the Rehabilitation Act and 29 C.F.R. § 1614.203(g).

**11.** On February 9, 1996, plaintiff filed a motion pursuant to FED.R.CIV.P. 56(f) seeking, *inter alia,* a continuance to permit additional discovery on the issue of the scope and definition of "appointing authority." Because the court is of the opinion that as a matter of law, the appointing authority is limited to the nuclear organization of the TVA, further discovery on this issue is not necessary.

In its brief in opposition at footnote six, plaintiff concedes that the only other nuclear facility operated by the TVA is Sequoyah in Chattanooga; this facility, however, is outside Ms. Mitchell's daily commute. (Evid. Sub. by Pl., Tab 12.) [12] Consequently, plaintiff must demonstrate that there was a vacant position available at the Browns Ferry Nuclear Facility which satisfied the requirements of 29 C.F.R. § 1614.203(g). *See Fedro v. Reno,* 21 F.3d 1391, 1395 n. 5 (7th Cir.1994) ("While § 1614.203(g) may require reassignment to a *vacant* lower level position when a position at the employee's previous grade or level is unavailable, it does not require reassignment to a position that does not exist.")

In an attempt to overcome her burden, plaintiff submits a voluminous list of over two-hundred and fifty positions for which she contends "she would have applied." (Evid. Sub. by Pl., Tab 12). Of this entire list, however, only approximately thirty-seven positions became available at the Browns Ferry Facility; [13] of those thirty-seven positions, the only position which was arguably available during the time in which plaintiff's clearance was initially revoked on October 14, 1993, until the time in which plaintiff was terminated, January 4, 1994, was the position of custodian.[14] (Evid. Sub. by Pl., Tab 12, number 177.)

Upon review of the evidence submitted by plaintiff to defeat defendant's motion, the court holds that plaintiff failed to establish her burden of persuading the court that she is otherwise qualified for the job of custodian.

First, although plaintiff offers the custodian position as a position to which she would have applied, she offers no evidence to rebut defendant's assertion that nuclear plant positions require access clearance. Without any argument by the plaintiff to the contrary, the court must assume that the custodian position required access clearance, and as was true with the Public Safety Officer position, if plaintiff were unable to obtain access to the Plant, it would be impossible for her to perform the essential functions of the custodian position.

Moreover, and most importantly, even if the custodian position did not require a security clearance, plaintiff not only failed to offer any evidence regarding the essential functions and duties of the custodian position, but she also offered no evidence regarding her qualifications for that, or for any other position. Without any delineation as to either of these issues, the court is precluded from determining whether she could have performed the essential functions of the job. Accordingly, because "[m]ere general allegations which do not reveal detailed and precise facts' will not prevent the award of summary judgment[,]" *Resolution Trust Corp. v. Dunmar Corp.* 43 F.3d 587, 592 (11th Cir.1995) (citation omitted) (en banc), *cert. denied,* ── U.S. ──, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995), the court holds that plaintiff has failed to demonstrate that she was "otherwise qualified" for the custodian position.[15]

## CONCLUSION

For the above stated reasons, the court is of the opinion that defendant's Motion to

---

12. Although there is no designation by the Sequoyah Nuclear Plant as to whether the commute is daily or weekly, the plant is in Chattanooga, which is designated elsewhere in Tab 12 as a weekly commute.

13. As noted, under 29 C.F.R. § 1614.203(g), the agency is only required to reassign an individual who meets the other requirements of that section to a funded vacant position located in the same commuting area and serviced by the same appointing authority. The only TVA facility meeting these requirements is Browns Ferry.

14. In the administrative hearing before the ALJ, the President of the Public Safety Service Employees' Union, Raymond Jordan, testified that positions are posted "usually a week, sometimes two or more" prior to the closing date, which means that the position of custodian, which was posted on October 12, 1993, may have been available during the relevant time period. (Evid. Sub. by Pl., Tab 11 at 57.)

15. Having found that plaintiff has not sufficiently demonstrated that she is "otherwise qualified," the court need not address whether plaintiff was discharged solely because of her disability, or the availability of damages for plaintiff if she were successful on her § 504 claim. The court does, however, take this opportunity to commend plaintiff's counsel for satisfying their ethical obligation of apprising the court of adverse authority regarding the issue of available damages under § 504. *See Lane v. Pena,* ── U.S. ──, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

Dismiss, which was converted to a Motion for Summary Judgment, is due to be granted. The motion shall be granted by separate order filed contemporaneously with this opinion.

### ORDER

In accordance with the Memorandum Opinion entered contemporaneously herewith, the court is of the opinion that no genuine issues of material fact exist herein, and defendants are entitled to judgment as a matter of law. Therefore, defendants' Motion to Dismiss, which was converted by the court to a Motion for Summary Judgment, is **GRANTED.** Plaintiff's Rule 56(f) Motion to Extend Discovery is **DENIED.** This action is **DISMISSED WITH PREJUDICE.** Costs are taxed against the plaintiff.