**Kenneth B. SKEES, Petitioner,**

v.

**DEPARTMENT OF the NAVY, Respondent.**

No. 86–588.

United States Court of Appeals, Federal Circuit.

Jan. 11, 1989.

Before NIES, BISSELL and MAYER, Circuit Judges.

## OPINION

MAYER, Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board, 29 M.S. P.R. 23 (1985), sustaining the dismissal of Kenneth Skees from his position at the Norfolk Naval Shipyard after his security clearance was revoked. We affirm.

### Background

Skees was employed as a sheet metal mechanic at the Norfolk Naval Shipyard. He began working in the shipyard in October 1978, and in January 1980 he received a secret security clearance. Navy regulations require all personnel to have a secret clearance to gain access to the Controlled Industrial Area (CIA) of the shipyard. Over eighty-two percent of the departmental work of a facility sheet metal mechanic is performed in the CIA. Skees' security clearance was revoked in 1983 and, unable to find a nonsensitive position for Skees, the Navy dismissed him.

Skees appealed his dismissal to the Board. In the initial decision, the presiding official held that the denial of the security clearance was improper and the removal could not be sustained. The full Board, however, concluded that it did not have authority to review the denial of security clearances and upheld the dismissal. 29 M.S.P.R. 23 (1985). The Supreme Court affirmed this principle in *Department of the Navy v. Egan,* —— U.S. ——, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). Skees now contends that his dismissal was improper because a security clearance was not needed for his position, and transfer to a nonsensitive position may have been feasible.

### Discussion

■ Neither of Skees' contentions can be squared with *Egan* in which the Supreme Court confronted "[t]he narrow question ... [of] whether the Merit Systems Protection Board (Board) has authority by statute to review the substance of an underlying

Neil C. Bonney, Schultz and Bonney, Virginia Beach, Va., submitted for petitioner.

David B. Stinson, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., submitted for respondent. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Asst. Director.

decision to deny or revoke a security clearance in the course of reviewing an adverse action." *Id.* 108 S.Ct. at 820. The answer is no.

Skees accepts *Egan* as prohibiting the Board from reviewing the Navy's revocation of his security clearance. He does not dispute that he knew his job was contingent on retaining his clearance. Rather, he contests the Navy's classification of his position as one requiring a security clearance in the first place. By this argument he seeks to do indirectly what he cannot do directly. He is still asking what was forbidden by *Egan:* that an outside nonexpert body second-guess the Navy's judgment on protection of classified information in its charge. But this argument was subsumed in *Egan.* If the Board cannot review the employee's loss of security clearance, it is even further beyond question that it cannot review the Navy's judgment that the position itself requires the clearance.

█ The Navy has a " 'compelling interest' in withholding national security information from unauthorized persons...." *Egan,* 108 S.Ct. at 824; *see also Snepp v. United States,* 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 765 n. 3, 62 L.Ed.2d 704 (1980); *United States v. Robel,* 389 U.S. 258, 267, 88 S.Ct. 419, 425, 19 L.Ed.2d 508 (1967). Only the Navy is fully informed about why certain positions are sensitive and others are not. Its authority to withhold national security information from unauthorized persons by classifying those positions is not subject to the scrutiny of the Board.

For "reasons ... too obvious to call for enlarged discussion," *CIA v. Simms,* 471 U.S. 159, 170, 105 S. Ct. 1881, 1888, 85 L.Ed. 2d 173 (1985), the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body deter-

mine what constitutes an acceptable margin of error in assessing the potential risk.

*Egan,* 108 S.Ct. at 825.

█ Skees' second point is that the government should have searched for a nonsensitive position to transfer him to after he lost his security clearance. The Navy says it had no obligation to do this but since it did look for another position, it does not object to the Board reviewing its efforts.

For the reasons set out in *Griffin v. Defense Mapping Agency,* 864 F.2d 1579, decided today, the Navy had no duty to search for a position for Skees. Therefore, its attempt to find him one was purely gratuitous. Nevertheless, the search the Navy made was exhaustive. It found thirty-three other positions in the shipyard that Skees was qualified for, but all required a security clearance. It is hard to see what else the Navy could do for him; he was simply no longer qualified to work in the shipyard. "[I]t seems too obvious to require proof that the usefulness of a civilian employed in a military department is gravely impaired if he cannot be cleared for security." *Schlegel v. United States,* 189 Ct.Cl. 30, 416 F.2d 1372, 1383 (1969) (Nichols, J., concurring).

█ We discuss this only to show that the Navy went out of its way to accommodate Skees, even when it need have done nothing for him. It ill behooves him to complain. And notwithstanding the Navy's acquiescence, the Board has no authority to review these efforts unless there was a statutory or administrative requirement that the Navy undertake the search. *See, e.g., Lyles v. Department of the Army,* 864 F.2d 1581 decided today. There was none here and review by the Board accordingly would be impermissible.

We do not subscribe to the view that when the Navy, whether through benevolence or self-interest, tries to keep an employee who loses his security clearance aboard in another capacity, it thereby opens itself up to administrative and judicial second-guessing. It is a wholly discretionary action which could only inure to the

benefit of the employee; there is no down-side for him. Therefore, whether the Navy does it, and how the Navy does it, is solely and finally up to the Navy.

### Conclusion

Accordingly, the decision of the Board is affirmed.

AFFIRMED.