**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MATHEW HAUPT,
          Appellant,

      v.

DEPARTMENT OF DEFENSE,
          Agency.

DOCKET NUMBER
DE-0752-21-0040-I-1

DATE: August 21, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Aaron Gragg</u>, Fort Huachuca, Arizona, for the appellant.

<u>Brandon Roby</u>, Esquire, Fort Meade, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's indefinite suspension. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2      At all times relevant to this appeal, the appellant held the position of Operations Research Analyst with the Department of Defense (DOD), Defense Information Systems Agency (DISA). Initial Appeal File (IAF), Tab 1 at 1. The position required that he obtain and maintain a security clearance. *E.g*., IAF, Tab 28 at 5, Tab 29 at 14, 19, 22.

¶3      In July 2020, the appellant plead guilty to a drug-related felony in an Arizona court—attempted possession of mushrooms. IAF, Tab 28 at 9, Tab 29 at 33. Soon thereafter, DISA proposed the suspension of his access to classified information. IAF, Tab 28 at 9, Tab 29 at 33-34. After a period in which the appellant submitted a response, DISA issued an August 2020 decision to suspend his access to classified information and occupancy of a sensitive position. IAF, Tab 28 at 9, Tab 29 at 35-36.

¶4      Days later, the agency proposed the appellant's indefinite suspension from service, "based on the suspension of [his] access to classified information." IAF, Tab 29 at 37-38. The accompanying specification stated that "[a]ll DISA employees are required to maintain the ability to access classified information as part of their duties" and "the DISA Security Office . . . suspended your access to

classified information pending the final adjudication of your security clearance by the DOD [Consolidated Adjudications Facility] CAF." *Id*. at 37. Following another response period, the agency issued its decision to indefinitely suspend the appellant, effective October 2020. IAF, Tab 28 at 9, Tab 29 at 96-98.

¶5    The appellant filed the instant appeal to challenge his indefinite suspension. IAF, Tab 30 at 1. He withdrew his hearing request and requested a decision on the written record. IAF, Tabs 32-33. The administrative judge reversed the action, finding that the agency failed to meet its burden of proof. IAF, Tab 37, Initial Decision (ID) at 4-12. He also considered but found no merit to the appellant's harmful error and due process claims. ID at 12-16.

¶6    The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant has filed a response and the agency has replied. PFR File, Tabs 3, 5.[2]

The administrative judge properly found that the agency failed to meet its burden.

¶7    An indefinite suspension lasting more than 14 days is an adverse action appealable to the Board under 5 U.S.C. § 7513(d). 5 U.S.C. § 7512(2); *Palafox v. Department of the Navy*, 124 M.S.P.R. 54, ¶ 8 (2016). An agency may indefinitely suspend an appellant when his access to classified information has been suspended and he needs such access to perform his job. *Palafox*, 124 M.S.P.R. 54, ¶ 8. In such a case, the Board lacks the authority to review the

---

[2] After the parties' petition, response, and reply, the appellant filed several additional pleadings, PFR File, Tabs 6, 7, 9, 12-13, 15, 17, to which the agency responded, PFR File, Tabs 11, 14, 16. The appellant's additional pleadings appoint a representative and request that we either dismiss the agency's petition for failing to meet its interim relief obligations or enforce the administrative judge's interim relief order. *E.g*., IAF, Tab 7 at 4-5, Tab 9 at 4-5, Tab 12 at 7-9, Tab 17 at 7. Because we find no reason to grant the agency's petition for review, the timeliness and merits of the appellant's arguments about interim relief are hereby rendered moot. *See, e.g.*, *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 20 (2016) (finding that any dispute over the agency's compliance with the interim relief order was moot upon issuance of the Board's final decision finding that the agency's petition did not meet the criteria for review).

merits of the decision to suspend access. *Palafox*, 124 M.S.P.R. 54, ¶ 8. However, the Board retains the authority to review whether (1) the appellant's position required access to classified information; (2) the appellant's access to classified information was suspended; and (3) the appellant was provided with the procedural protections specified in 5 U.S.C. § 7513.[3] *Palafox*, 124 M.S.P.R. 54, ¶ 8. The Board also has the authority under 5 U.S.C. § 7701(c)(2)(A) to review whether the agency provided the procedural protections required under its own regulations. *Palafox*, 124 M.S.P.R. 54, ¶ 8. Additionally, because a tenured Federal employee has a property interest in continued employment, the Board may consider whether the agency provided minimum due process in taking the indefinite suspension action. *Palafox*, 124 M.S.P.R. 54, ¶ 8.

¶8          In this case, the only element in dispute on review is the first—whether the appellant's position required the "access to classified information" the agency relied upon for its indefinite suspension. Although the appellant conceded that his position requires a security clearance, *e.g.*, IAF, Tab 28 at 5, the appellant indicated that his position does not require "access to classified information." IAF, Tab 28 at 5, Tab 31 at 4, Tab 35 at 4-5. Among other things, he explained that "access to classified information" was not a condition listed in his hiring or onboarding documents. IAF, Tab 28 at 5, Tab 31 at 4, Tab 35 at 5. The appellant also indicated that he was "functioning in [his] position perfectly well [], even teleworking from home over an unclassified network[,] as were the majority of

---

[3] In some other cases, the Board has utilized a similar standard that refers to the employee's security clearance, rather than their access to classified information. *See Rogers v. Department of Defense*, 122 M.S.P.R. 671, ¶ 5 (2015) (indicating that the Board will generally only review whether: (1) the employee's position required a security clearance; (2) the clearance was denied, revoked, or suspended; and (3) the employee was provided with the procedural protections specified in 5 U.S.C. § 7313); *Grimes v. Department of Justice*, 122 M.S.P.R. 36, ¶ 7 (2014) (same). Because the indefinite suspension action before us was based on the appellant's suspended access to classified information, rather than a suspended security clearance, the *Palafox* standard is the more appropriate one.

DISA Personnel," without access to classified information, before the agency acted to suspend his access to classified information. IAF, Tab 35 at 4. According to the appellant, he lacked the means to access classified information before the suspension of his access to classified information because his "SIPRNet" token had "long expired" from a lack of use. IAF, Tab 31 at 4, Tab 35 at 4.

¶9 After considering the parties' competing arguments and evidence on this point, the administrative judge found that the agency's charge failed because although the appellant's position required a security clearance, the agency did not prove that his position required a favorable "access" determination. ID at 4-12. In doing so, he recognized and in part relied upon the distinction between the appellant's "eligibility for access to classified information," which would be decided by CAF, and the appellant's "access to classified information," which was decided by DISA. *Id.*

*CAF decision*

¶10 On review, the agency has directed us to a January 2021 letter, where CAF indicated that it was preliminarily revoking the appellant's eligibility for access to classified information. PFR File, Tab 1 at 5-6 (referencing IAF, Tab 29 at 106-11). According to the agency, the administrative judge "completely ignored" that fact in the initial decision. *Id.* The agency seems to imply that we should uphold the appellant's November 2020 indefinite suspension because his eligibility for access to classified information was preliminarily revoked in January 2021. *Id.*

¶11 We disagree. First, the administrative judge did not ignore this evidence; he cited and discussed the CAF letter while considering the distinction between the appellant's eligibility for access to classified information and his access to classified information. ID at 6 n.3. Second, the Board is required to adjudicate an adverse action solely on the grounds invoked by the agency, which, in this case, concerned DISA's August 2020 suspension of the appellant's "access to

classified information," not CAF's January 2021 decision as to the appellant's "eligibility for access to classified information." IAF, Tab 29 at 96, 106; *see Gamboa v. Department of the Air Force*, [120 M.S.P.R. 594](#), ¶ 7 (2014) (recognizing that the Board is required to adjudicate an adverse action solely on the grounds invoked by the agency and may not substitute what it considers to be a more appropriate charge). For the same reason, the agency's related arguments about the administrative judge construing its charge too narrowly by focusing on the "access" requirement are unavailing. PFR File, Tab 1 at 19-20.

*Proposing and deciding officials' sworn statements*

¶12    The agency's next arguments concern the sworn statements it presented from the proposing and deciding officials regarding any "access to classified information" requirement for his position. PFR File, Tab 1 at 6-8; IAF, Tab 34 at 5-9. Both indicated that all DISA positions, including the appellant's, required a security clearance and access to classified information. IAF, Tab 34 at 5-9.

¶13    The administrative judge did not find these statements persuasive. ID at 6, 10-11. He observed that they both contained some identical language, including specific references to "DISA Instruction 240-220-36," as they asserted all DISA positions required a current security clearance. ID at 6 & n.3; IAF, Tab 34 at 5-6. Yet neither referenced any source as they asserted that the appellant's position and all others within DISA required access to classified information. ID at 10-11; IAF, Tab 34 at 5-7. The administrative judge next noted that the declarations were post-hoc and specifically prepared for adjudication of this appeal. ID at 11; IAF, Tab 34 at 5-9. Finally, he found that the probative value of the declarations was diminished by an inaccuracy they both contained—the officials' reference to "DISA Instruction 240-220-36" was erroneous. ID at 6, n.4 & 11; *compare* IAF, Tab 34 at 5-7 (proposing and deciding officials' sworn statements, referencing "DISA Instruction 240-220-36"), *with* IAF, Tab 29 at 22-27 (agency document titled "DISA Instruction 240-110-36"), Tab 36 at 4 (agency representative's unsworn assertion that the references to 240-220-36, rather than 240-110-36, were

mistaken). Also of note, the administrative judge indicated that he was not concerned about the officials' making their sworn statements in bad faith; he explained that they may sincerely but mistakenly believe that the appellant's position required access to classified information. ID at 12 n.8.

¶14    On review, the agency challenges the administrative judge's findings about these sworn statements. PFR File, Tab 1 at 6-8. As further detailed below, we do not find the agency's arguments persuasive and we instead agree with the administrative judge's skepticism of the statements upon which the agency relies.

¶15    The agency first asserts that, although the administrative judge characterized the proposing and deciding officials' sworn statements as post-hoc and prepared specifically for this litigation, that was the inevitable result of the appellant withdrawing his request for a hearing; the same officials would have testified if the hearing had occurred. PFR File, Tab 1 at 6. We acknowledge and appreciate the practical impact of the appellant withdrawing his request for hearing. But it was the agency's burden to prove its charge. *See, e.g.*, *Rogers v. Department of Defense*, 122 M.S.P.R. 671, ¶¶ 2, 6 (2015) (finding that an agency proved its charge, which was based on the suspension of access to classified information); *Gamboa*, 120 M.S.P.R. 594, ¶ 11 (finding that the agency did not prove its charge, which was based on the failure to maintain a security clearance as a condition of employment). Here, the agency failed to present any persuasive evidence that predated this litigation to support its allegation that the appellant's position required access to classified information. And the evidence specifically prepared for this litigation contains several shortcomings about the disputed issue, despite being specifically created to address the matter. *Compare* IAF, Tab 1 at 5 (appellant raising this issue in his initial pleading), *with* IAF, Tab 34 at 5-9 (agency's sworn statements, made months later, for purposes of this litigation).

¶16    The agency next argues that the sworn statements about the appellant's position requiring access to classified information are bolstered by the same

officials' similar assertions within their proposal and decision letters. PFR File, Tab 1 at 7 (referencing IAF, Tab 29 at 37, 96). But the proposal and decision letters are hardly persuasive evidence of allegations contained within. *E.g.*, *Gamboa*, 120 M.S.P.R. 594, ¶ 9 (finding that documents created as part of adjudicatory processes, years after an employee was appointed, did not constitute preponderant evidence that the agency imposed a security clearance requirement at the time of appointment or any other time before the agency took action to revoke the clearance and remove him). Plus, we agree with the administrative judge's explanation that these officials may very well have a good faith but mistaken belief that all DISA positions require access to classified information. We therefore find that these officials' statements that the appellant's position required access to classified information on two occasions, rather than one, is of limited value.

¶17    Next, the agency argues that the proposing and deciding officials' assertion about access to classified information is consistent with DISA Instruction 240-110-36 and its indication that all DISA positions are at least "noncritical sensitive" and require at least a "secret" level security clearance. PFR File, Tab 1 at 7 (referencing IAF, Tab 29 at 22-27). However, the agency's implication that these concepts are altogether indistinguishable is unavailing. *See Gamboa*, 120 M.S.P.R. 594, ¶ 7 (recognizing that not all sensitive positions require a security clearance or entail access to classified information).

¶18    The agency also argues that the sworn statements were made by officials who were most qualified to know about the appellant's position and its requirements—the proposing official, who was the appellant's first-line supervisor, and the deciding official, who was the person specifically authorized to manage the personnel security program. PFR File, Tab 1 at 7-8. We recognize and appreciate the nature of these individuals' positions. But both inaccurately described the underpinnings of the appellant's security clearance requirement. IAF, Tab 34 at 5-6; *supra* ¶ 15. And neither could definitively describe the level

of clearance the appellant required. They instead described their "understanding" as to that issue, which further calls into question the degree to which they considered or knew about the requirements of the appellant's position. *Compare* IAF, Tab 34 at 5-6 (agency's sworn statements about the level of clearance required), *with* IAF, Tab 29 at 14, 19 (appellant's position description, explicitly describing the level of clearance required). Also of note, neither sworn statement contains any particularized explanation about the appellant's position or duties in terms of access to classified information. They instead used similar language, indicating that "all DISA employees are required to maintain access to classified information as part of their duties" and "there are no positions at the Agency for which the maintenance of access to classified information is not required." IAF, Tab 34 at 5-7. The absence of any further explanation is especially glaring, given the appellant's repeated assertions that his position did not require access to classified information, and he had no means to access classified information, even before DISA officially suspended his access. *E.g.*, IAF, Tab 31 at 4, Tab 35 at 4-5.

¶19    For all these reasons, we are unmoved by the agency's arguments about the persuasiveness of the proposing and deciding officials' sworn statements.

*Appellant's nondisclosure agreement*

¶20    In another argument, the agency asserts that the administrative judge ignored another piece of evidence regarding its burden of proving that the appellant's position required access to classified information—a "Classified Information Nondisclosure Agreement" signed by the appellant. PFR File, Tab 1 at 8, 14 (referencing IAF, Tab 29 at 128-29). However, an administrative judge's failure to mention all the evidence of record does not mean that he did not consider it in reaching his decision. *E.g.*, *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). More importantly, the agency has overstated the significance of this evidence. The agency points us to a provision which states, "I hereby accept

the obligations contained in this Agreement in consideration of my being granted access to classified information." PFR File, Tab 1 at 8; IAF, Tab 29 at 128. The agency suggests that this provision shows that access to classified information was a requirement of the appellant's position. PFR File, Tab 1 at 8; IAF, Tab 29 at 128. We disagree. The referenced provision and remainder of the agreement show that the appellant agreed to certain conditions before the agency would give him access to classified information; it does not show that his position required that access to classified information.

¶21    To conclude, the appellant consistently asserted that although his position did require a security clearance, it did not require the "access to classified information" the agency cited to indefinitely suspend him from service. The agency argued otherwise. However, the little evidence the agency relied upon to support its stance is not persuasive. Accordingly, we agree with the administrative judge's determination that the agency failed to satisfy its burden of proof.

We will not consider the agency's new argument that "access to classified information" was a prerequisite to the "security clearance" required by the appellant's position.

¶22    Within its petition for review, the agency has also included another argument that is distinct from those already discussed. It concerns the relation between the appellant's "security clearance," his "eligibility for access to classified information," and his "access to classified information." PFR File, Tab 1 at 11-14. The agency asserts that the appellant's position requires a security clearance that, in turn, requires both eligibility for access to classified information and access to classified information. *Id*. Put another way, the agency is arguing that, without the "access to classified information" that was

suspended and relied upon for his indefinite suspension, the appellant is not holding the "security clearance" his position required.[4] *Id.*

¶23    The Board will not ordinarily consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). With that in mind, we find that this argument about the appellant's access to classified information being a requirement of his security clearance was not one that the agency clearly articulated before the administrative judge. We will illustrate with a few examples. First, in its initial arguments, the agency asserted that the "appellant's position requires a security clearance which allows him access to classified information." IAF, Tab 4 at 7. That suggests that the security clearance allows for access, rather than access being a prerequisite for the security clearance. This pleading also argued that the appellant's position requires "a security clearance and access to classified information," which suggests that the two are different requirements, rather than ones in which the former cannot be held or maintained without the latter. *Id.* at 12-13.

¶24    In a subsequent prehearing statement, the agency repeatedly cited evidence to indicate that the appellant's position required a security clearance, but it summarily stated, without citation or explanation, that the position required "a security clearance and/or access to classified information." IAF, Tab 29 at 6. The agency then submitted the two sworn statements discussed above, but they are similarly devoid of any indication that "access to classified information" is a prerequisite for the "security clearance" his position required. IAF, Tab 34

---

[4] This argument directly contradicts another within the agency's petition. While discussing the significance of the CAF decision, which was rendered after the appellant filed this appeal but before the initial decision, the agency stated that "it is true that appellant had a clearance when he filed this appeal." PFR File, Tab 1 at 5-6. The agency has not explained this contradiction.

at 5-9. We found nothing in the agency's arguments below to assert or even suggest that the appellant could not maintain his required "security clearance" if he lacked "access to classified information."

¶25     For these reasons, we find that this argument—that "access to classified information" is functionally equivalent to a "security clearance" for purposes of this appeal—is a new one that we will not consider for the first time on review.

The agency's remaining arguments are unavailing.

¶26     The agency has presented a number of other arguments or assertions that do not neatly fit within one of the categories already addressed. We have considered each, and will explicitly address a few, but do not find that any require a different result.

¶27     The agency asserts that the administrative judge's initial decision in this appeal is inconsistent with his initial decision in a separate but factually similar appeal involving a different appellant. PFR File, Tab 1 at 9-10. Several of the agency's other arguments rely on the initial decisions of other administrative judges. *Id*. at 15-18. However, the Board is not bound by initial decisions, and they have no precedential effect, so we will not address these arguments any further. *Special Counsel v. Greiner*, 117 M.S.P.R. 117, ¶ 11 n.5 (2011).

¶28     The agency's petition also points out that the administrative judge "independently" relied, in part, on provisions from the DOD manual as he reversed the agency's action, even though the appellant's arguments did not. PFR File, Tab 1 at 10-11. To the extent that the agency is implying that it was improper for the administrative judge to consider the agency's evidence to determine whether the agency met its burden of proof, without specific prompting by the pro se appellant, the agency is incorrect.

¶29     In another portion of its petition, the agency states that the question in dispute in this appeal "is not whether or not the agency has the ability to grant access or eligibility, but whether the agency has the ability to revoke or suspend it." *Id*. at 11. But that is not the question in dispute. The question in dispute is

whether the agency proved the elements of its charge—including proof that the appellant's position required access to classified information. *Supra* ¶ 7.

¶30 The agency has also asserted that this decision and that of the administrative judge are effectively expanding the Board's review of cases such as this, in contravention of binding precedent about the limitation of our authority. PFR File, Tab 1 at 19-20. We disagree. The Board's authority in cases such as this is limited. Among other things, the Board may not review the merits of an underlying security clearance determination, *Department of the Navy v. Egan*, 484 U.S. 518, 530-31 (1988), an agency's "judgment that the position itself requires the clearance," *Skees v. Department of the Navy*, 864 F.2d 1576, 1578 (Fed. Cir. 1989), or an agency's determination concerning an individual's eligibility for a "sensitive" position, *Kaplan v. Conyers*, 733 F.3d 1148, 1155 (Fed. Cir. 2013). Here, though, we are simply holding the agency responsible for proving what it has alleged—that the appellant's position required "access to classified information." This decision does not constitute a judgment as to the propriety of any such requirement.

¶31 Finally, we note that the agency's petition argues that the administrative judge lacked the authority to reinstate the appellant because of the CAF decision regarding his eligibility for access to classified information that was issued in January 2021, while this appeal was pending. PFR File, Tab 1 at 25-27; *see supra* ¶ 10. However, in the time that has passed since the agency made that argument in its petition for review, the appellant has resigned. He did so as part of a settlement agreement stemming from a separate Board appeal that arose out of a new indefinite suspension the agency imposed after the one at issue in this appeal. *See Haupt v. Department of Defense*, MSPB Docket No. DE-0752-22-0066-I-1, Initial Appeal File, Tab 36 at 6, Tab 37. Accordingly, the appellant's duty status for the period following the CAF decision is moot.

**ORDER**

¶32      We ORDER the agency to CANCEL the appellant's indefinite suspension, which was effective October 7, 2020. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶33      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶34      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶35      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶36      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                           /s/ for
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions (if applicable).
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.